UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
UNITED STATES OF AMERICA                :
                                        :
        - v. -                          :
                                        :        24 Cr. 524 (JLR)
  KEITH TAYLOR                          :
                                        :
              Defendant.                :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# THE GOVERNMENT'S MOTIONS IN LIMINE

MATTHEW PODOLSKY
Acting United States Attorney
Southern District of New York

Eli J. Mark
Rebecca Delfiner
Assistant United States Attorneys
        - Of Counsel -

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND ..................................................................................................... 2

I.    The Government Should Be Permitted to Introduce Summary Non-Expert Testimony by an IRS Revenue Agent, Who Should Be Permitted to Remain in the Courtroom Throughout Trial ......................................................................................................... 5

II.   Evidence Or Argument Concerning Any Alleged Reliance on Advice or Presence of Counsel in Engaging in the Charged Conduct Should Be Precluded Unless and Until the Defendant Establishes an Admissible Factual Basis, and the Defendant Should Be Required to Promptly Produce Any Relevant Documents ................................................ 10

III.  The Court Should Preclude The Defendant from Arguing That Modest Needs's Tax Status as a Charitable Organization Reflects that the IRS Approved of Taylor's Management of Modest Needs ........................................................................................ 19

IV.   Evidence or Argument Asserting Negligence by the Victims or Others, Including Purported Negligence by Donors, the Board of Directors, or Accountants, or Lack of Reliance on Statements Made by Taylor Should Be Precluded ...................................... 21

V.    Evidence or Argument Concerning Whether Officials at Other Charities Engaged in Similar Practices Should Be Precluded.......................................................................... 23

VI.   Evidence Or Argument Concerning the Government's Charging Decisions and Investigative Techniques Should Be Precluded.............................................................. 24

VII.  Evidence Or Argument Concerning the Defendant's Family Background, Marital Status, Ancestry, Health Condition, or Any Other Personal Factor Unconnected to Guilt Should Be Precluded .............................................................................................................. 25

VIII. Evidence or Argument Concerning the Defendant's or Modest Needs Foundation's Non-Fraudulent Conduct Committed During the Scheme or Prior Good Acts Should Be Precluded    .................................................................................................................. 25

IX.   Improper Use of Agent Reports to Impeach Witnesses Should Be Precluded ................ 27

X.    The Defendant Should Be Precluded from Admitting into Evidence Any Documents Not Produced Prior to Trial and Should be Ordered to Produce Any Evidence Obtained From Rule 17 Subpoenas...................................................................................................... 28

XI.   The Court Should Preclude the Defendant From Offering His Statements for Their Truth    ....................................................................................................................... 33

CONCLUSION.................................................................................................................... 34

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA                    :
:
   - *v.* -                                      :
:                    24 Cr. 524 (JLR)
 KEITH TAYLOR                               :
:
          Defendant.                :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PRELIMINARY STATEMENT

The Government respectfully seeks rulings on several issues prior to trial.

*First*, the Government should be permitted to introduce summary non-expert testimony by an IRS Revenue Agent, who should be excluded from any sequestration order.

*Second*, the Government moves: (1) for an order that the defendant Keith Taylor promptly provide written notice and discovery concerning any purported advice-of-counsel defense; and (2) to preclude the defendant from offering argument—including in his opening statement, if any—concerning alleged reliance on the advice, approval, or presence of counsel in engaging in the charged conduct, unless and until the defendant establishes an admissible factual basis for the required elements of an advice-of-counsel defense.

*Third*, the Government seeks to preclude certain evidence or argument that is irrelevant to the issues at trial, and/or for which any conceivable probative value is substantially outweighed by the risk of juror confusion, distraction from the evidence, unnecessary lengthening of the trial, and/or unfair prejudice to the Government. Specifically, the Government moves to preclude evidence or arguments concerning:

1

1)      that Modest Needs Foundation ("Modest Needs")'s tax status as a charitable organization reflects that the Internal Revenue Service ("IRS") approved of Taylor's management of Modest Needs;

2)      that any victim of the defendant's wire fraud was negligent in failing to detect the fraud, and that there can be no fraud if the victim did not rely on any statement's made by the defendant, or that the victim's reliance on the defendant was objectively unreasonable;

3)      that any officials, executives, board members, employees, or agents/representatives of other charities engaged in similar practices to the defendant;

4)      the Government's charging decisions in or related to this matter;

5)      the defendant's family background, health condition, age, or any other personal factor unconnected to his guilt or innocence; the potential punishment he faces if convicted; and that, because the defendant purportedly took certain legitimate non-fraudulent steps during the scheme, he did not commit fraud with respect to the victims of the charged scheme;

6)      the defendant's prior commission of good acts or lack of bad acts;

7)      improper use of agents' reports to impeach witnesses;

8)      the introduction of any documents that the defendant has not produced in discovery pursuant to Federal Rule of Criminal Procedure 16(b), including any documents that the defendant has obtained through trial subpoenas issued pursuant to Federal Rule of Criminal Procedure 17(c); and

9)      the introduction of the defendant's own statements for their truth.

## FACTUAL BACKGROUND

Taylor was the founder, president, and CEO of Modest Needs, a New York-based non-profit organization that was formed in Manhattan. (Compl. ¶ 5). Modest Needs primarily used a

crowd-sourcing funding model to help low-income workers pay for unexpected expenses like medical bills or broken appliances. Since at least 2011, Modest Needs has been prohibited from conducting charitable or fundraising activity in the state of New York, because the charity stopped filing relevant paperwork with the New York Attorney General's Charities Bureau, including failing to file an independent financial report for Modest Needs. Nonetheless, after 2011, Taylor conducted charitable fundraising activity on behalf of Modest Needs in New York.

From at least in or about 2016 through in or about 2024, Taylor embezzled more than $2.5 million from Modest Needs and defrauded its donors, using Modest Needs's money to fund his lavish personal spending, including dining in New York's most expensive restaurants, buying high-end electronics and other luxury goods, like caviar, unsuccessful day-trading in stocks, renting a luxury apartment in midtown Manhattan, and paying for his own cosmetic surgery. (Compl. ¶¶ 6, 14-19). Taylor also used money from Modest Needs on female escorts and drugs. Taylor stole funds from Modest Needs by, among other means, (i) paying his personal expenses directly from Modest Needs's bank accounts, (ii) withdrawing cash from Modest Needs's bank accounts, (iii) wire-transferring funds from Modest Needs's bank accounts to his own personal accounts, and (iv) transferring funds from Modest Needs's PayPal accounts to his own personal PayPal account. (*Id.* ¶¶ 6, 14(a)-(g)).

Taylor knew that it was improper to make these withdrawals because, among other things, the IRS had previously audited Taylor's use of Modest Needs's funds for his personal expenses in the period from 2009 through 2011. This audit eventually resulted in settlements between the IRS and Taylor and Modest Needs, including a stipulated decision that Taylor owed back taxes on income he had received and did not report, as well as the consent of the IRS that Modest Needs retain its status as a tax-exempt organization. In 2010, Taylor also fired the charity's then-chief

financial officer after she questioned Taylor's use of Modest Needs's funds to pay Taylor's personal expenses. (*Id.* ¶ 21). Taylor has not paid the IRS the back taxes he owes resulting from that audit. To the contrary, he continued paying himself in ways that were designed to frustrate the ability of the IRS to garnish his wages. (*Id.* ¶ 20).

During the charged time period, from in or about 2016 through in or about 2024, Taylor maintained a website for Modest Needs and solicited donations through that website. The website provided information about Modest Needs's purported board of directors, including the names of each purported board member. The board of directors, however, was fake. It was comprised of Taylor's acquaintances, including a bartender, a friend, and a house-cleaner, none of whom ever attended a Modest Needs board meeting. (*Id.* ¶¶ 23-28). While Modest Needs previously had a legitimate board of directors, that board all resigned in 2015, and at least one of the board members expressly resigned due to Taylor's failure to provide the board with Modest Needs's IRS Form 990s.

During the charged time period, the Modest Needs website posted the entity's Form 990s, which were prepared by Taylor, for relevant years. (*Id.* ¶ 31). The Form 990s contained multiple false and misleading statements, including that Modest Needs's board had met with external auditors and unanimously approved each form before filing, and that the board had set Taylor's compensation based on analysis of comparative data. (*Id.*) As noted, however, Modest Needs did not have a board of directors during this time period. In addition to posting Modest Needs's Form 990s, the Modest Needs website also posted purported annual reports, which likewise contained multiple false and misleading statements. In particular, the annual reports stated that Modest Needs maintained "such low overhead" so that it could "allocate nearly all of [its] funding to hard-working families who need our help the most." (*Id.* ¶ 30(b)).

For at least the calendars years of 2017 through 2022, Taylor did not file personal income

tax returns or pay income taxes on the income he received from Modest Needs. (*Id.* ¶¶ 32(a)-(e).)

## ARGUMENT

**I.    The Government Should Be Permitted to Introduce Summary Non-Expert Testimony by an IRS Revenue Agent, Who Should Be Permitted to Remain in the Courtroom Throughout Trial**

### a.    Relevant Background

To assist the jury in the examination of bank records and the tax consequences of the false

information submitted to the IRS by the defendant, the Government intends to present summary

witness testimony. In this case, as is typical in this District, the Government intends to have an

IRS Revenue Agent testify at trial in the Government's case-in-chief to present this testimony.

The IRS Revenue Agent's anticipated testimony includes computing the outstanding tax

due and owing for the prosecution years in this matter by calculating the correct amount of taxes

the defendant should have reported and paid to the IRS. The IRS Revenue Agent will apply the

Internal Revenue Code to the evidence introduced in the case as it relates to Taylor's obligations

to file federal individual income tax returns and pay taxes. The Revenue Agent will explain

concepts including interest income, income tax withholding, and deductions as they pertain to the

Form 1040 and any accompanying schedules. The tax computations and summaries will be based

upon, among other things, application of the Internal Revenue Code to the evidence presented

during trial, including witness testimony, bank records, and other documents.

### b.    Applicable Law

#### 1.    Revenue Agent Testimony

Consistent with long-standing practice, an IRS summary witness may appropriately testify

about the application of tax accounting principles to the Government's evidence at trial.

"Testimony by an IRS agent that allows the witness to apply the basic assumptions and principles

of tax accounting to particular facts is appropriate in a tax evasion case." *See United States v. Stierhoff*, 549 F.3d 19, 27-28 (1st Cir. 2008) (discussing and affirming summary testimony by an IRS revenue agent);   *United States v. Nicholson*, 961 F.3d 328, 336 (5th Cir. 2020) (affirming admission of summary witness testimony of an IRS agent where the agent's testimony and summary charts were "derived from the evidence that had already been introduced, namely, earlier testimony, tax return documents, and bank account records"). "The key to admissibility is that the summary witness's testimony does no more than analyze facts already introduced into evidence and spell out the tax consequences that necessarily flow from those facts." *Stierhoff*, 549 F.3d at 27-28; *see also United States v. Pree*, 408 F.3d 855, 869 (7th Cir. 2005) ("It is well established that the nature of a summary witness' testimony requires that he draw conclusions from the evidence presented at trial." (internal quotation marks omitted)); *United States v. Sabino*, 274 F.3d 1053, 1067-68 (6th Cir. 2001), *opinion amended and superseded*, 307 F.3d 446 (6th Cir. 2002) (affirming IRS agent testifying as a summary witness where she "analyzed the multitude of documents and testimony admitted into evidence and properly testified as to the government's calculation of tax due from the [defendants]"); *United States v. Moore*, 997 F.2d 55, 58 (5th Cir. 1993) ("As a summary witness, an IRS agent may testify as to the agent's analysis of the transaction which may necessarily stem from the testimony of other witnesses.").

An IRS Revenue Agent need not be qualified as an expert witness to testify as a summary witness, particularly when the tax calculations are straightforward and transparent. *See Stierhoff*, 549 F.3d at 28; *see also United States v. Serafino*, 281 F.3d 327, 331 (1st Cir. 2002) (remarking that a jury would not regard IRS agent's "number-crunching" as an expert opinion, but rather as an objective rendition of the evidence); *Pree*, 408 F.3d at 869 ("When a summary witness simply

testifies to what the Government's evidence shows, he does not testify as an expert witness."). As

Judge Liman recognized in a recent tax prosecution:

> The result follows logically from the Second Circuit's conclusion, on a related issue, that "[a] witness's specialized knowledge, or the fact that he was chosen to carry out an investigation because of this knowledge, does not render his testimony 'expert' as long as it was based on his 'investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise.'" *United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) (quoting *Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 181 (2d Cir. 2004)). In *Rigas*, the Second Circuit found that an accountant testifying to his calculations concerning what a company would have owed if they had not, as other fact witnesses testified, fraudulently reclassified their debt was properly considered summary testimony. *Id.* at 224*; see also United States v. Blakstad*, 2021 WL 5233417, at *4-6 (S.D.N.Y. Nov. 9, 2021) (finding an accountant properly testified as a summary witness where the witness had reviewed voluminous financial records and produced summary exhibits tracing payments between different financial accounts in a securities fraud prosecution); [*United States v. Barnwell*] , [No. 15 Cr. 620 (NSR),] 2017 WL 1063457, at [*5 (S.D.N.Y. Mar. 20, 2017)] (allowing IRS agent to testify to a defendant's tax liability as a summary witness).

*United States v. Lawrence Ray*, No. 20 Cr. 110 (LJL), 2022 WL 558146, *16 (S.D.N.Y. Feb. 24,

2022).

Indeed, in this District, IRS Revenue Agents are routinely permitted to testify as summary

witnesses without being qualified as experts. *See, e.g.*, *Ray*, 2022 WL 558146, *16 (proposed

revenue agent testimony was summary non-expert testimony); *Barnwell*, 2017 WL 1063457, at *5

(granting Government's motion to permit proposed revenue agent to provide summary non-expert

testimony over defense objection); *see also United States v. Wynder*, No. 20 Cr. 470 (PKC) (IRS

Revenue Agent provided summary non-expert testimony in May 2023); *United States v. Ariel

Jimenez*, No. 18 Cr. 879 (SHS) (IRS Revenue Agent provided summary non-expert testimony in

February 2022); *United States v. Rebecca Bayuo*, No. 15 Cr. 576 (JGK) (IRS Revenue Agent

provided summary non-expert testimony in October 2018); *United States v. Scali*, No. 16 Cr. 466

(NSR) (IRS Revenue Agent provided summary non-expert testimony in February 2018).

### 2.  Sequestration

Regarding sequestration of witnesses, Federal Rule of Evidence 615 provides that:

> At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding: (a) a party who is a natural person; (b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney; (c) a person whose presence a party shows to be essential to presenting the party's claim or defense; or (d) a person authorized by statute to be present.

*See also United States v. Jackson*, 60 F.3d 128, 135 (2d Cir. 1995) (discussing the district court's discretion under Rule 615 and the factors a court could consider in exercising its discretion). Courts in this District have regularly permitted IRS Revenue Agents to remain in the courtroom during trial. *See, e.g.*, *Ray*, 2022 WL 558146, at *17 (holding that because IRS Revenue Agent testimony must be based on the evidence, the agent's "presence therefore is essential"); *Barnwell*, No. 15 Cr. 620 (NSR) (S.D.N.Y. Mar. 20, 2017) (Dkt. 27).

### c.  Discussion

As is typical in this District, the Government should be permitted to introduce summary non-expert testimony by the IRS Revenue Agent, and that agent should be permitted to remain in the courtroom during the pendency of the trial.

The IRS Revenue Agent's testimony will consist of straightforward tax calculations—as they relate to the defendant's obligations to file federal individual income tax returns, report his income, and pay taxes—that stem from the testimony of other witnesses and admitted documentary evidence. The IRS Revenue Agent will not offer an expert opinion, and will express no opinion

on the defendant's state of mind. Therefore, the Agent's testimony is admissible as non-expert summary testimony. *See, e.g., Stierhoff*, 549 F.3d at 28.[1]

Furthermore, the IRS Revenue Agent should be permitted to remain in the courtroom throughout the presentation of the evidence because the IRS Revenue Agent is a person whose presence is essential to the presentation of the Government's case under Rule 615(c). *See Ray*, 2022 WL 558146, at *17 (excluding IRS Revenue Agent from sequestration). Indeed, the Agent's role requires him or her to apply tax accounting principles to the evidence admitted during the Government's case-in-chief. In addition, the purpose for sequestering a witness is "to discourage and expose fabrication, inaccuracy, and collusion." *United States v. Charles*, 456 F.3d 249, 258 (1st Cir. 2006) (internal quotation marks omitted); *see also United States v. Strauss*, 473 F.2d 1262, 1263 (3d Cir. 1973) (purpose of excluding witnesses is "to prevent the shaping of testimony by witnesses to match that given by other witnesses"). When the witness's testimony relates only to an analysis of evidence that was already admitted, the rationale for the sequestration of the witness is absent. *See id.*

Indeed, "[b]ased on the purpose and function of a summary witness" it is "more efficient to allow [the IRS Revenue Agent] to follow the evidence as it is presented to ensure she only comments on evidence properly admitted at trial, and to ensure the accuracy of her testimony should cross-examination 'bring out any facts not considered' by the Government's other witnesses." *Barnwell*, (Dkt. 27 at 6 (quoting *United States v. Mohney*, 949 F.2d 1397, 1404 (6th Cir. 1991))); *see, e.g., United States v. Lussier*, 929 F.2d 25, 30 (1st Cir. 1991) (affirming the

---

[1] However, if the Court believes that the IRS Revenue Agent's expected testimony requires him or her to testify as an expert, the Government is prepared to so qualify the agent. *See United States v. Sherry*, 100 F.3d 943, at *1 (2d Cir. 1996) (unpublished) (affirming the expert testimony of an IRS agent whose testimony was offered "both to assist the jury in understanding the tax computations on each of the relevant returns and to summarize the record evidence").

district court's decision to allow an IRS agent who would testify about previously admitted evidence at the end of the Government's case to remain in the courtroom because "there would have been 'little, if any reason' to sequester him" (internal quotation marks omitted)).

More generally, beyond the specific context of IRS Revenue Agents, courts in this District and Circuit have permitted the testimony of such witnesses without sequestration. *See e.g.*, *United States v. Little*, No. 12 Cr. 647 (PKC) (Dkt. 361 (Trial Tr.) at 71) (Mar. 20, 2018) (granting Government's motion, over defense objection, that summary witness be permitted to remain in courtroom during presentation of evidence relevant to her testimony); *see also United States v. Berus*, No. 14 Cr. 199 (ARR) (E.D.N.Y); *United States v. Gilmartin*, No. 12 Cr. 287 (MGC) (S.D.N.Y.); *United States v. Daugerdas*, No. 09 Cr. 581 (WHP) (S.D.N.Y.); *United States v. Ohle*, No. 08 Cr. 1109 (JSR) (S.D.N.Y.); *United States v. Pirro*, No. 99 Cr. 182 (BDP) (S.D.N.Y.).

Accordingly, the IRS Revenue Agent should be permitted to remain in the courtroom throughout the trial.

## II. Evidence Or Argument Concerning Any Alleged Reliance on Advice or Presence of Counsel in Engaging in the Charged Conduct Should Be Precluded Unless and Until the Defendant Establishes an Admissible Factual Basis, and the Defendant Should Be Required to Promptly Produce Any Relevant Documents

### a. Relevant Background

By email dated March 20, 2025, the Government asked defense counsel whether the defendant intends to assert an advice-of-counsel defense and/or present evidence or argument that relates to the presence of attorneys, accountants, or other professionals during the time period of the charged scheme, including any communications the defendant had with (and/or advice he received from) any attorneys, accountants, or other professionals. As of the date of this filing, the Government has not received a responsive position from the defendant.

### b.  Applicable Law

#### 1.  The Advice of Counsel Defense and Notice and Disclosure Requirements

The advice-of-counsel defense is a more specific form of the defense of good faith, available in limited circumstances in which a good faith instruction may otherwise be applicable. *See, e.g.*, *United States v. Greenspan*, 923 F.3d 138, 146 (3d Cir. 2019); *see also* Sand *et al.*, *Modern Federal Jury Instructions*, Instr. 8-04. Advice-of-counsel "is not a free-standing defense." *United States v. Van Allen*, 524 F.3d 814, 823 (7th Cir. 2008) (internal quotation marks omitted).

To establish an advice-of-counsel defense, a defendant must show that he (1) honestly and in good faith sought the advice of counsel; (2) fully and honestly laid all the facts before his counsel; and (3) in good faith and honestly followed counsel's advice, believing it to be correct and intending that his acts be lawful. *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012). The defense applies only where the defendant sought the attorney's advice "before taking action." *United States v. Al-Shahin*, 474 F.3d 941, 947 (7th Cir. 2007) (internal quotation marks omitted).

"Each requirement must be satisfied." *Colasuonno*, 697 F.3d at 181. Where the defendant fails to meet one or more requirement, he is not entitled to a jury instruction. *Id.*; *see also, e.g.*, *Greenspan*, 923 F.3d at 146-47; *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017); *United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997). Nor is he entitled to argue, directly or indirectly, that he has such a defense. *See, e.g.*, *United States v. Quinones*, 417 F. App'x 65, 67 (2d Cir. 2011) (affirming denial of instruction and order precluding defense from arguing advice of counsel; "defendants are not entitled to such an instruction unless there are sufficient facts in the record to support the defense," and "the defendants [in this case] have not shown the required factual predicate for an advice-of-counsel defense"); *United States v. Atias*, No. 14 Cr. 403 (DRH), 2017 WL 563978, at *3 (E.D.N.Y. Feb. 10, 2017) ("All available information indicates that the

[pertinent] attorney represented [another], not defendants. Accordingly, the term 'advice of counsel' should not be employed in referring to [the attorney]. Doing so would be legally inappropriate and likely to mislead the jury."). Although "[u]pon a proper request, a defendant is entitled to a jury instruction on any defense theory for which there is a foundation in the evidence, even if the trial court determines that the evidentiary foundation of the defense theory is only tenuous," *United States v. Paul,* 110 F.3d 869, 871 (2d Cir. 1997) (citations omitted), the "situations in which the advice-of-counsel defense may be employed are severely limited," *Lurie v. Wittner*, 228 F.3d 113, 134 (2d Cir. 2000).

Raising an advice-of-counsel defense also triggers practical consequences as to discovery and administration of pretrial and trial proceedings. By asserting an advice-of-counsel defense, and thereby relying on otherwise privileged attorney-client communications, a defendant waives privilege over all other attorney-client communications about the same subject matter. "[A] party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000); *see also id.* at 183 n.4 ("The client's offer of his own or the attorney's testimony as to a specific communication to the attorney is a waiver as to all other communications to the attorney on the same matter." (citation and quotation marks omitted)); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[a] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes"); Fed. R. Evid. 502(a). As a result, defendants asserting such a defense must disclose to the Government "any communications or evidence defendants intend to use to establish the defense" and "even otherwise-privileged communications that defendants do *not* intend to use at trial, but that are

relevant to proving or undermining the advice-of-counsel defense, are subject to disclosure in their entirety." *United States v. Crowder*, 325 F. Supp. 3d 131, 138 (D.D.C. 2018) (internal quotation marks omitted; emphasis in original) (collecting cases). Failure to make such a disclosure results in forfeiture of the defense. *See Bilzerian*, 926 F.2d at 1291 (affirming refusal to let the defendant testify about his "good faith regarding the legality" of the charged conduct unless he was also subject to cross-examination regarding communications with his attorney); *see also United States v. Wells Fargo Bank N.A.*, No. 12 Civ. 7527 (JMF), 2015 WL 3999074, at *1 (S.D.N.Y. June 20, 2015) (civil defendant asserting advice-of-counsel must "make a full disclosure during discovery and the failure to do so constitutes a waiver of that defense" (internal quotation marks omitted)).

Given the complexity and issues concerning an advice-of-counsel defense, courts routinely order defendants to provide notice of whether they intend to advance such a defense in advance of trial, and, if so, to provide discovery. *See, e.g.*, *United States v. Ash*, No. 19 Cr. 780 (LAK) (S.D.N.Y. Nov. 15, 2021) (Dkt. 115) (in advance of trial, ordering defendant to "provide the government with [] written notice and the contours (including the bases and scope of, and the count or counts to which it is said to apply) of any advice of counsel defense that [the defendant] will raise at trial"); *United States v. Scali*, No. 16 Cr. 466 (NSR), 2018 WL 461441, at *8 (S.D.N.Y. Jan. 18, 2018). That "disclosure should include not only those documents which support [the] defense, but also all documents (including attorney-client and attorney work product documents) that might impeach or undermine such a defense." *United States v. Hatfield*, No. 06 Cr. 550 (JS), 2010 WL 183522, at *13 (E.D.N.Y. Jan. 8, 2010); *Ash*, No. 19 Cr. 780 (LAK) (S.D.N.Y. Nov. 15, 2021) (Dkt. 115) (same).

### 2.    Federal Rule of Evidence 104

Preliminary questions concerning the admissibility of evidence, including whether evidence is relevant or a privilege exists, are to be determined by the Court. Fed. R. Evid. 104(a). The Court has discretion to order a hearing to assist it in resolving such questions. Fed. R. Evid. 104(c)(3) (the court "must conduct a[] hearing" when "justice so requires"). The Court's authority to resolve such questions is rooted in its "inherent authority to manage the course of trials." *United States v. Valencia*, 826 F.2d 169, 171 (2d Cir. 1987) (internal quotation marks omitted). At such a hearing, and more generally, the proponent of evidence bears the burden of demonstrating its admissibility by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *see also United States v. Brooks*, No. 08 Cr. 35 (PKL), 2008 WL 2332371, at *1 (S.D.N.Y. June 4, 2008) ("As the proponent of the proposed testimony, defendant has the burden of establishing admissibility by a preponderance of the evidence."); *United States v. Sabir*, No. S4 05 Cr. 673 (LAP), 2007 WL 1373184, at *6 (S.D.N.Y. May 10, 2007) (the "burden of showing that proffered testimony is offered to negate the *mens rea* element of a crime and not in support of some improper defense theory falls squarely on the defendant" (internal quotation marks omitted)); *United States v. Camacho*, 353 F. Supp. 2d 524, 536 (S.D.N.Y. 2005) ("defendants as proponents of the evidence bear the burden of [admissibility]").

The propriety of admitting any such evidence or argument can be determined at a preliminary hearing, where necessary. One circumstance in which a preliminary hearing may be ordered is to determine the propriety of a proffered defense. *See, e.g.*, *United States v. Paul*, 110 F.3d 869, 871 (2d Cir. 1997) ("[I]t is appropriate for a court to hold a pretrial evidentiary hearing to determine whether a defense fails as a matter of law."). This is so for good reason: "no proper interest of the defendant would be served by permitting his legally insufficient evidence to be aired

at trial, and interests of judicial economy suggest that the jury should not be burdened with the matter." *United States v. Villegas*, 899 F.2d 1324, 1343 (2d Cir. 1990); *see also* Fed. R. Evid. 103(d) ("To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means."). A preliminary hearing may be ordered to consider a proffered advice-of-counsel defense, just as it may be ordered to consider any other defense. *See also Scali*, 2018 WL 461441, at *8 n.4 ("Guided by efficiency and judicial economy, it behooves the Court to address [advice of counsel] before trial.").

Alternatively, a court may order a defendant not to offer evidence in front of the jury in support of a proffered advice-of-counsel defense until such time as there is a sufficient basis in the record. *See, e.g.*, *United States v. Brik*, No. 15 Cr. 78 (SRN), 2016 WL 3753080, at *4 (D. Minn. July 11, 2016) ("Only after hearing witness testimony will the Court be in a position to determine whether such evidence is admissible. Defense counsel shall request a sidebar or hearing outside the presence of the jury prior to eliciting any testimony that concerns legal communications . . ..").

### c.  Discussion

#### 1.  Taylor Should Be Ordered Promptly to Provide Written Notice and Discovery Concerning Any Alleged Advice-of-Counsel Defense

As noted above, Taylor has not stated whether he plans to assert an advice-of-counsel defense. Accordingly—and particularly since there appears to be no valid basis for the defense—Taylor should be ordered promptly to provide (i) written notice of any alleged advice-of-counsel defense, including its bases, scope, and to which specific counts he believes it applies, and (ii) any discovery materials in support of this defense, to the extent not already in the Government's possession. *See Scali*, 2018 WL 461441, at *8; *Hatfield*, 2010 WL 183522, at *13.

15

**2. Taylor Should Be Precluded from Offering Argument—Including in His Opening Statement, If Any—Concerning an Alleged Advice-of-Counsel Defense Unless and Until He Establishes an Admissible Factual Basis for the Elements of the Defense**

The Government is unaware of any basis for Taylor to offer an advice-of-counsel defense. Indeed, based on the Government's investigation, Taylor appears unable to meet a single part of the rigorous four-part test. "[T]he thrust of [the advice-of-counsel defense] is that the defendant, on the basis of counsel's advice, believed his conduct to be lawful and thus could not be found to have had unlawful intent." *Beech-Nut Nutrition Corp.*, 871 F.2d at 1194; *see also Scully*, 877 F.3d at 478 (defense requires that, "[b]efore taking action, he in good faith sought the advice of an attorney"). Here, the Government is unaware of any factual basis to find that, prior to engaging in the charged conduct, Taylor spoke with an attorney for the "purpose of securing advice on the lawfulness of [his] possible future conduct." *Id.* Nor is there any factual basis of which the Government is aware to find that, before acting, Taylor "made a full and accurate report" to any attorney of all "material facts." *Id.* And in any event, no lawyer, acting properly, would advise a client, for example, to use a charity's funds to pay for personal expenses or to make false and misleading statements to defraud donors.

In short, the defendant cannot come close to establishing a basis in admissible evidence for an advice-of-counsel defense. Nor has Taylor produced any reciprocal discovery that would substantiate such a defense. Until such time that he does, any argument in support of such a defense—including in the defendant's opening statement, if any—should be precluded. *See, e.g.*, *Quinones*, 417 F. App'x at 67. For the same reasons, Taylor should be precluded from offering evidence for the purported purpose of attempting to satisfy any of the requirements of an advice-of-counsel defense, unless he first establishes, either in a preliminary hearing before or during trial,

*see* Fed. R. Evid. 104, or by relying on evidence otherwise admissible at trial, that he has sufficient admissible evidence to satisfy all the defense's requirements, *see, e.g.*, *Colasuonno*, 697 F.3d at *4.

### 3. Taylor Should Be Precluded from Offering Argument—Including in His Opening Statement, If Any—Or Evidence Suggesting He Is Not Guilty Because an Attorney Purportedly "Approved" of the Lawfulness of the Conduct or Did Not Warn Him Against Certain Conduct

Taylor should not be permitted to advance through the back door what would amount to a quasi-advice-of-counsel defense—that is, having failed to meet the requirements for the defense, to argue nonetheless that the defendant should not be found guilty because another lawyer purportedly "approved" of, did not object to, or was involved in some way in his conduct—when he cannot advance an advice-of-counsel defense. That is precisely the kind of argument that is "likely to mislead the jury," *Atias*, 2017 WL 563978, at *3, into thinking that the defendant has a defense that the law says, in no uncertain terms, he does not have. The advice-of-counsel defense is subject to multiple and meaningful restrictions—including that a defendant seek the advice of a lawyer acting as his lawyer, communicate all material facts to his lawyer, and strictly follow the advice of his lawyer—because a defense based on alleged legal advice or approval that does not meet these strictures is ripe for abuse. Taylor should not be permitted to engage in an end-run around the defense's requirements. *Cf. S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013) (The defendant "argues that the presence of lawyers is relevant to the overall context of the transaction, but that is such a fine-grained distinction from a reliance on counsel defense, that it would likely confuse the jury. A lay jury could easily believe that the fact that a lawyer is present at a meeting means that he or she must have implicitly or explicitly 'blessed' the legality of all aspects of a transaction. . .. This misunderstanding would give the defendant all of the essential benefits of an advice of counsel defense without having to bear the burden of proving any of the

17

elements of the defense."); *see United States v. Blagojevich*, 794 F.3d 729, 738 (7th Cir. 2015) (There is no "advice-of-counsel defense without demonstrating advice of counsel.").

To be sure, if Taylor elects to testify, and within the bounds of the Federal Rules of Evidence, he may talk about whether he believed himself to be acting wrongfully. But the fact that this subject is generally proper does not mean that all testimony (or other evidence, if any exists) purportedly offered on this subject is admissible, or that Taylor may argue that evidence means something that, as a matter of law, it does not. Accordingly, before the defendant offers any such purported evidence or makes such an argument, the Court should order at least a *prima facie* showing, and if warranted a hearing under Rule 104. *See United States v. Ash*, No. 19 Cr. 780 (LAK) (S.D.N.Y. Nov. 28, 2021) (Dkt. 130) (ordering that "the defendant shall not offer any evidence or argue in opening statement on this entire subject [*i.e.*, involvement of attorney in her charged conduct] without first proffering to the government and the Court, in writing, exactly what evidence or argument would be offered or made"). At a minimum, the defendant should have to describe such evidence or argument fully to the Court and the Government, before it is heard by the jury, so that it may be cabined, as is likely to be necessary, and the jury appropriately instructed. *See id.* And under no circumstance should the defendant be permitted to offer evidence or argument suggesting that the defendant relied on the "assistance" or "approv[al]" of a lawyer acting as a lawyer, a defense that has no apparent basis in fact in this case, no basis in law (unless Taylor can establish an advice-of-counsel defense, which he cannot), and in any event fails under Federal Rule of Evidence 403. *See Atias*, 2017 WL 563978, at *3; *Tourre*, 950 F. Supp. 2d at 684.

III.    **The Court Should Preclude The Defendant from Arguing That Modest Needs's Tax Status as a Charitable Organization Reflects that the IRS Approved of Taylor's Management of Modest Needs**

a.    **Relevant Background**

By email dated March 20, 2025, the Government asked defense counsel whether the defendant intends to argue that the IRS purportedly has found or told Taylor that he has done nothing wrong. As of the date of this filing, the Government has not received a responsive position from the defendant.

The Government anticipates that Taylor may rely on a stipulated decision entered by a United States Tax Court on February 5, 2018, determining that Modest Needs qualified as a tax-exempt charitable organization to argue that the IRS approved of Taylor's management of Modest Needs.  This stipulated decision was agreed to and ordered in connection with a settlement of the IRS's audit of Modest Needs for calendar years 2009 to 2011.  As part of the resolution of the audit, Taylor also agreed to pay back taxes.  In total, the IRS assessed Taylor back taxes of approximately $250,000.

Based on statements Taylor has made on the Modest Needs website, the Government expects that Taylor will argue that the stipulated decision indicates that the IRS has found that Taylor appropriately or permissibly managed Modest Needs.  In particular, Taylor touted his settlement with the IRS in a multi-year annual report for Modest Needs covering the period from 2015 to 2017, which Taylor posted on the Modest Needs website in 2018.  In the annual report, Taylor opined that his settlement with the IRS was the "closest thing anyone . . . [would] ever get to a complete apology on the part of the IRS." And Taylor specifically highlighted the United States Tax Court decision determining, upon agreement between the parties, that Modest Needs enjoyed tax-exempt status as a charitable organization, writing: "**in addition to the information we normally attach to our annual reports, I'm pleased to provide for your review a copy of**

19

**the judgment affirming Modest Needs's tax-exempt status**. And I have to say, I'm also pretty proud to have that document because the IRS issues it under exactly ONE set of circumstances: **complete and total exoneration of an organization and its leadership at the conclusion of a contentious examination**." (emphasis in original).

### b. Applicable Law

A criminal defendant "does not have an unfettered right to offer testimony that is . . . inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). To the contrary, like any other party, a criminal defendant is properly required to comply with the Federal Rules of Evidence, and it is not a violation of a defendant's rights to require such compliance. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998). To be admissible, evidence must be relevant, and its probative value must not be substantially outweighed by the risk of unfair prejudice. Fed. R. Evid. 401, 403. Rules of evidence governing the admission of hearsay (Fed. R. Evid. 801-807) apply to exclude out-of-court statements by a defendant, with limited exceptions. Where evidence is irrelevant, unduly prejudicial, or violative of other evidentiary rules, it is properly excluded.

### c. Discussion

The Court should preclude Taylor from arguing—including in his opening statement—that the IRS's tax-exempt determination from 2018 reflects any purported "total exoneration" of his conduct. Not only does that decision pertain to an entirely different time period than the conduct charged here (2009-2011 as opposed to 2016-2024), but also the United States Tax Court's one-sentence decision, which was entered "[p]ursuant to agreement of the parties," contains no analysis of Taylor's management of Modest Needs or any findings or results of the IRS's audit—much less express any approval of how Taylor managed Modest Needs. Thus, that the IRS permitted Modest

Needs to continue enjoying a tax-exempt status has no reflection on whether Taylor impermissibly used Modest Needs's funds for his personal expenses.

IV.    **Evidence or Argument Asserting Negligence by the Victims or Others, Including Purported Negligence by Donors, the Board of Directors, or Accountants, or Lack of Reliance on Statements Made by Taylor Should Be Precluded**

The defendant should be precluded from making any argument that victims or others should have prevented or detected the defendant's fraud or that the defendant did not have an intent to defraud because victims were not actually influenced by any of the defendant's fraudulent statements. This includes donors to Modest Needs, the charity itself, its board of directors or accountants. Any such argument based on negligence by the victim or others, or that the victims were not actually influenced by the defendant's fraud, is irrelevant to the issues before the jury, and would confuse and distract the jury.

As an initial matter, it is settled law that "an innocent crime victim has no duty to detect a crime being perpetrated against it." *United States v. Holland*, 394 F. App'x 766, 768 (2d Cir. 2010). Therefore, the Second Circuit has repeatedly recognized that "a victim's negligence is not a defense under the federal fraud statutes." *United States v. Frankel*, 682 F. App'x 20, 22 (2d Cir. 2017). For example, in a case involving a mortgage fraud scheme, it was no defense that the victim lender "could have discovered based on external sources that the representation [in the loan application] was false," because the victim's "lack of sophistication is not relevant to the intent element of mail or wire fraud." *United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007); *see also United States v. Isola*, 548 F. App'x 723, 725 (2d Cir. 2013) (lender's negligence also "irrelevant to the materiality of [the defendant's] false statements"). And in a travel fraud prosecution, the Second Circuit affirmed the district court's decision to restrict cross-examination into the victim's "vigilance (or lack thereof)" in his dealings with the defendant, firmly "reject[ing] [the defendant's] argument that the foolishness of [the victim's] belief in [the defendant's] fraudulent

21

scheme somehow vitiates [the defendant's] fraudulent intent." *United States v. Thomas*, 377 F.3d 232, 241, 243 (2d Cir. 2004).

These principles have also been applied to other fraud prosecutions. *See United States v. Ahmed*, No. 14 Cr. 277 (DLI), 2016 WL 8732355, at *4 (E.D.N.Y. June 24, 2016) ("Defendant may not argue that he did not intend to defraud Medicare because Medicare paid his claims, negligently or otherwise."); *United States v. Lesniewski*, No. 11 Cr. 1091 (VM), 2013 WL 3776235, at *2 (S.D.N.Y. July 12, 2013) ("[A]ny evidence proffered by Defendants for the purpose of establishing that the [United States Railroad Retirement Board] was negligent or careless would be irrelevant to the inquiry of whether they possessed the requisite intent to commit the fraud at issue in this case"), *aff'd*, 614 F. App'x 542 (2d Cir. 2015); *United States v. Nekritin*, No. 10 Cr. 491 (KAM), 2011 WL 2462744, at *7 (E.D.N.Y. June 17, 2011) (precluding defense from "arguing or presenting evidence that Medicare and Medicaid's payment of their claims is a defense to health care fraud").

Accordingly, any argument by the defendant premised on victim negligence should be precluded. This should include any argument that the defendant's fraud could have been detected and prevented by the charity, its board, its accountants, or any outside auditors, including by the IRS. Under settled Second Circuit precedent, such defense theories are improper because the reasonableness of the victim's response to a fraudulent scheme is irrelevant.

Relatedly, any argument by the defendant premised on a particular victim not actually relying on the defendant's statements should be precluded as well. Actual reliance is not an element of the offense. *See United States v. Weaver*, 860 F.3d 90, 96 (2d Cir. 2017) ("reliance is not an element of criminal fraud, while materiality is" (*citing Neder v. United States*, 527 U.S. 1, 24-25

(1999))). And statements can be material (*i.e.*, have the tendency to influence) even if they do not cause any actual reliance. *Id.*

### V.    Evidence Or Argument Concerning Whether Officials at Other Charities Engaged in Similar Practices Should Be Precluded

By email dated March 20, 2025, the Government asked defense counsel whether the defendant intends to present evidence or argument that relates to whether other executives at other charities similarly misappropriate money from their charities and/or used charitable funds for personal expenses. As of the date of this filing, the Government has not received a responsive position from the defendant.

The defendant may permissibly argue that the money he withdrew from Modest Needs was appropriate based on admissible evidence probative of his intent at the time of the withdrawals. However, the defendant should not be permitted to offer evidence in support of an argument that officials at other charities reportedly used money for their own personal expenditures. For the same reason, the Government is not permitted to offer evidence in support of an argument that because others may have committed embezzlement, Taylor too must have engaged in fraud. *See, e.g.*, *United States v. Oldbear*, 568 F.3d 814, 821 (10th Cir. 2009) (affirming preclusion of evidence in embezzlement case as to how persons other than the defendant used funds because "only [the defendant's] actions and state of mind were material to her guilt"); *United States v. Gatto*, 986 F.3d 104, 129 (2d Cir. 2021) ("[T]hat others are engaging in improper behavior does not make it lawful.")

Moreover, even were such evidence and argument relevant (and it is not), it should be barred under Rule 403. Evidence and argument of other officials improperly raiding their charities would necessarily lead to a trial within a trial as to whether the alleged misconduct to which the defendant points was or was not analogous to those made by the defendant, and would be very

likely both to confuse and distract the jury and unduly and materially lengthen the trial. Indeed, were the defendant to offer evidence suggesting that other officials at charities made similar withdrawals, the Government would expect to offer evidence regarding, among other things, whether or not those withdrawals were also committed under false and fraudulent pretenses, all of which would lengthen the trial, require additional documentary and likely testimonial evidence, and distract from the relevant issues.

### VI.    Evidence Or Argument Concerning the Government's Charging Decisions and Investigative Techniques Should Be Precluded

Juries are routinely and properly instructed that they should not consider persons not on trial. *See, e.g.*, *United States v. Muse*, No. 06 Cr. 600 (DLC), 2007 WL 1989313, at *22 (S.D.N.Y. July 3, 2017). That instruction should be given here. In addition, the defendant should be precluded from offering argument about what charges were brought or not brought against Taylor or others. *See United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (granting motion to preclude defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting [the defendant]"); *see also United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997) (a "selective prosecution defense is an issue for the court rather than the jury"). A prosecuting authority's motives or views underlying its "charging decisions are not proper subjects for cross-examination and argument." *United States v. Re*, 401 F.3d 828, 833 (7th Cir. 2005). Those subjects have nothing to do with the defendant's guilt, and introducing them would only serve to confuse or distract the jury.

Similarly, the defendant should be precluded from offering argument that the Government's decision not to charge him with other crimes means he did not engage in other misconduct, or that such misconduct must not have been criminal. The Government's decision not

to bring certain charges against a defendant is just as irrelevant to guilt as the Government's decision to bring certain charges against the defendant. *See generally United States v. Armstrong*, 517 U.S. 456, 464 (1996). The Government's charging decisions are irrelevant to the issues at trial, and introducing them would serve no purpose other than to confuse or distract the jury, or inappropriately suggest nullification.

## VII.   Evidence Or Argument Concerning the Defendant's Family Background, Marital Status, Ancestry, Health Condition, or Any Other Personal Factor Unconnected to Guilt Should Be Precluded

The Government is unaware of any lawful basis for the defendant to offer evidence or argument concerning his family background, marital status, ancestry, health, or any other similar factors. The defendant should be precluded from doing so, and from mentioning such subjects in their opening statements, absent a showing that such a factor bears on the defendant's guilt. *See, e.g., United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had son with cerebral palsy whom defendant had devoted his life to care for); *United States v. Battaglia*, No. S9 05 Cr. 774, 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); *United States v. Harris*, 491 F.3d 440, 447 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

## VIII.   Evidence or Argument Concerning the Defendant's or Modest Needs Foundation's Non-Fraudulent Conduct Committed During the Scheme or Prior Good Acts Should Be Precluded

To the extent that the defendant may seek to present evidence or argument concerning his or Modest Needs's prior commission of non-fraudulent acts or "good acts" while he was affiliated with Modest Needs, including any philanthropic giving or other good deeds, or to offer evidence of his non-criminal activities to seek to disprove his guilt of the crimes charged (apart from

referring to specific expenditures to demonstrate that certain of Modest Needs's funds were being legitimately disbursed), he should be precluded from doing so. Specific-act propensity evidence is no more admissible to refute a criminal charge than it is to establish one.

It is settled law that "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions." *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990). Similarly, while a defendant may offer general testimony from a character witness about his reputation for a "pertinent trait of character," or the witness's opinion of the defendant as regards that trait, *see* Fed. R. Evid. 404(a)(2)(A) & 405(a), a defendant can neither testify nor offer other proof to establish specific acts in conformity with that trait that are not an element of the offense. *See, e.g.*, *United States v. Benedetto*, 571 F.2d 1246, 1249-1250 (2d Cir. 1978) (evidence of defendant's specific acts improperly admitted because "character evidence has long been admissible only in the form of reputation and not in the form of a recitation of good or bad acts"); *United States v. Fazio*, No. S2 11 CR 873, 2012 WL 1203943, at *5 (S.D.N.Y. Apr. 11, 2012) ("a defendant may not affirmatively try to prove his innocence by reference to specific instances of good conduct; character is to be proven by reputation or opinion evidence."), *aff'd*, 770 F.3d 160 (2d Cir. 2014); *United States v. Rivera*, No. 13 Cr. 149, 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015) (precluding evidence of charitable giving). The defendant should accordingly be precluded from offering evidence or argument, including in his opening statement, concerning any charity, philanthropy, or any other specific instance or instances of his prior good acts, or the lack of commission of other bad acts.

For the same reasons, the defendant should be precluded from offering this type of evidence or argument insofar as it relates to Modest Needs, as any prior good acts by that or any other entity similarly have no bearing on the defendant's guilt. Nor should the defendant be permitted to

suggest that his alleged prior achievements make it less likely that he committed the charged crimes.

## IX.    Improper Use of Agent Reports to Impeach Witnesses Should Be Precluded

In accordance with its obligations under Federal Rule of Criminal Procedure 26.2 and 18 U.S.C. § 3500 (the "Jencks Act"), the Government will produce summaries of witness interviews prepared by law enforcement. The Government respectfully requests that the Court preclude the defendant from introducing the contents of these reports to impeach such witnesses during cross-examination, publishing the contents of the reports to the jury, or otherwise suggesting to the jury that the reports are statements of the witnesses who did not write or adopt them. A party may impeach a witness with a prior inconsistent statement of that witness, but the statement must be the witness's own statement that he or she either made or adopted. *See* Fed. R. Evid. 613; *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) (concluding that the trial court did not err in refusing to admit prosecutor's notes taken during debriefing of witness and explaining that a "third party's characterization" of a witness's statement does not constitute a prior statement of that witness "unless the witness has subscribed to that characterization"); *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (holding that because "the written statement of the FBI agent was not attributable to [the witness]," it was "properly rejected as a prior inconsistent statement"). The problem with using a third party's summary or characterization of the witness's statement to impeach is "one of relevancy": "If a third party's notes reflect only that note-taker's summary characterization of a witness's prior statement, then the notes are irrelevant as an impeaching prior inconsistent statement, and thus inadmissible." *Almonte*, 956 F.2d at 29.

In this case, the Government has provided the defendant with broad discovery, which includes some agents' notes and reports and which will be supplemented when the Government provides additional material pursuant to 18 U.S.C. § 3500, including notes and reports

summarizing investigators' interviews with Government witnesses. These notes and reports were not reviewed or adopted by any of the Government witnesses. As a result, the statements in these reports are not statements of any of the Government's witnesses (other than the reports' authors, if called to testify at trial), cannot be used for impeachment, and should not be read aloud or shown to the jury. *See Almonte*, 956 F.2d at 28; *Leonardi*, 623 F.2d at 757. The Court should therefore preclude any use or suggestion by defense counsel that a statement in a law enforcement summary report is a statement of the witness being interviewed.[2]

### X. The Defendant Should Be Precluded from Admitting into Evidence Any Documents Not Produced Prior to Trial and Should be Ordered to Produce Any Evidence Obtained From Rule 17 Subpoenas

#### a. Relevant Facts

Throughout the pendency of this case, the Government has repeatedly requested reciprocal discovery from the defendant. Given the Government's communications with defense counsel, it believes the defendant may put on a case; however, the Government has received no reciprocal discovery to date.

#### b. Discussion

Case law is clear that while a defendant may wait to inform the Government about certain core decisions, like whether the defendant will put on a case or testify, a defendant cannot invoke this principle to decline to produce reciprocal discovery. *See, e.g.*, *United States v. Ryan*, 448 F.

---

[2] The Government acknowledges that the defendant may ask a witness whether he or she made a statement that is reflected in a law enforcement report. However, if the defendant is not satisfied with the witness's answer, the defendant may not publish or introduce the report's contents as a prior inconsistent statement. Additionally, if a witness says that he or she does not remember a fact, the defendant may attempt to refresh a witness's recollection by showing the witness the notes or report, but only if the defendant does so in a manner that does not imply that the report is the witness's own statement or publish its contents to the jury. And if the report or notes do not refresh the witness's recollection, the defendant may not try to admit that report as purported impeachment evidence.

Supp. 810, 810-11 (S.D.N.Y. 1978), *aff'd*, 594 F.2d 853, 811 (2d Cir.); *United States v. Bump*, 605 F.2d 548, 551-52 (10th Cir. 1979) (requiring reciprocal disclosure over defendant's objection that it would violate his constitutional rights); *United States v. Cohen*, No. 85 Cr. 843 (JFK), 1985 WL 4851, at *2 (S.D.N.Y. Dec. 23, 1985) (ordering reciprocal discovery over suggestion that discovery should be unilateral); *see generally Williams v. Florida*, 399 U.S. 78, 85 (1970) ("Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the [prosecution's] case before announcing the nature of his defense[.]").

The law is also clear that a defendant may not decline to produce discovery until he is positive precisely what he intends to introduce and when—a position that effectively would render Rule 16 a nullity, and effectively would render a nullity the Court's order that the defendant provide a pre-trail exhibit list. *See, e.g.*, *United States v. Avenatti*, No. 19 Cr. 374 (JMF) (Dkt. 213) (S.D.N.Y. Jan. 7, 2022) (requiring defense production under Rule 16 to begin approximately two weeks before trial, over the defendant's objection); *United States v. Maxwell*, No. 20 Cr. 330 (AJN) (Dkt. 297) (S.D.N.Y. June 2, 2021) (setting a defense Rule 16 deadline of three weeks before trial, over the defendant's objection); *United States v. Jasper*, No. 00 Cr. 825 (PKL), 2003 WL 223212, at *4 (S.D.N.Y. Jan. 21, 2003) (explaining that "[a]llowing [the] defendant to defer the provision of such discovery until a final determination regarding whether or not [to] put an expert witness on the stand would seem to frustrate" the goal of allowing the government a fair opportunity to prepare).

For example, in *United States v. Shea*, No. 20 Cr. 412 (AT) (S.D.N.Y.), the trial court ordered the defendant to produce to the Government "all documents and evidence subject to disclosure under Rule 16(b) including, as relevant, substantive, non-impeachment evidence." *United States v. Shea*, 20 Cr. 412 (AT) (S.D.N.Y. May 4, 2022) (Dkt. 206 at 1). Furthermore, the

court reminded the defendant that the trial court "has 'broad discretion in fashioning a remedy' to address any instances of a party's non-compliance with their Rule 16 obligations, including 'ordering the exclusion of evidence' where it finds that Defendant could have timely disclosed such evidence under Rule 16, but chose not to do so." *Id.* (quoting *United States v. Lee*, 834 F.3d 145, 158 (2d Cir. 2016), and citing *United States v. Napout*, No. 15 Cr. 252 (PKC), 2017 WL 6375729, at *8 (E.D.N.Y. Dec. 12, 2017)).

Likewise, in *United States v. Ryan*, 448 F. Supp. 810 (S.D.N.Y.), *aff'd*, 594 F.2d 853 (2d Cir. 1978), the defense withheld production of documents it intended to introduce through the defendant if he testified because the defense had not yet decided whether he would testify. The court rejected that position:

> While the refusal to testify is constitutionally protected, the trial strategy determination is not so protected. Since the defendant has availed himself of the strategy to obtain discovery of the government, he must comply with the request for reciprocal discovery.

448 F. Supp. at 811.

The court in *Ryan* also ruled that the defendant would be precluded from offering into evidence documents that had not been timely turned over. *Id.* Similarly, in *United States v. Jasper*, No. 00 Cr. 825 (PKL), 2003 WL 223212, at *4 (S.D.N.Y. Jan. 21, 2003), the defense claimed that the Government's request for reciprocal discovery and summaries of expert testimony was "premature" because the defense had not yet decided whether to call the expert. The court disagreed, explaining that "[a]llowing [the] defendant to defer the provision of such discovery until a final determination regarding whether or not [to] put an expert witness on the stand would seem to frustrate" the goal of allowing the Government a fair opportunity to prepare. *Id.* So too, in *United States v. Huntress*, No. 13-CV-199S, 2015 WL 631976, at *33 (N.D.N.Y. Feb. 13, 2015), the court rejected the argument that the defense need not provide reciprocal discovery because it had "'not

made any decision as to whether it will be putting a case on at trial, as we do not know if the government will meet its burden of proof at trial.'" *See also, e.g.*, *United States v. Rajaratnam*, No. S2 09 Cr. 1184 (RJH), 2011 WL 723530, at *5 (S.D.N.Y. Feb. 25, 2011) ("A defendant would always like more information about the government's case before revealing anything about his or her own, but Rule 16 conditions a defendant's disclosure obligations on the government's having made certain specified disclosures, not on the government's laying open its entire case or the defendant's satisfaction."); *Napout*, 2017 WL 6375729, at *8 (describing the "approach used by many courts": "if the Court determine[s] that a Defendant could have made timely disclosure, but failed to timely do so, the defendant ran the risk that the exhibit would be excluded"); *see generally United States v. Weiss*, 930 F.2d 185, 199 (2d Cir. 1991) (affirming preclusion of evidence defendant had failed to produce; explaining that permitting defendant to use documents the prosecution had not timely seen would have given defendant an unfair advantage); *United States v. Young*, 248 F.3d 260, 270 (4th Cir. 2001) (same).

Finally, on the subject of Rule 17(c) subpoenas, if the defendant has obtained any evidence pursuant to such subpoenas, that evidence has not been provided to the Government. The purpose of Rule 17(c) is to provide both parties with the opportunity to inspect documents produced before trial. *See* Fed. R. Crim. P. 17(c)(1) ("when the items arrive, the court may permit the parties and their attorneys to inspect all or part of [the subpoenaed documents]"). In fact, Rule 17(c)(1) makes no reference to *ex parte* review of subpoena returns and instead states that materials will be returned directly to the Court, which may permit "the parties and their attorneys to inspect all or part of them."  Because the Court's authority should not be invoked to permit a party to engage in trial by ambush, "[i]t is the majority view of the courts that the structure of Rule 17 requires the court to allow both parties to view the documents returned under the subpoena." *United States v.*

*Litos*, No. 12 Cr. 175, 2014 WL 806022, at *5 (N.D. Ind. Feb. 24, 2014); *accord United States v. Menendez*, No. 23 Cr. 490 (SHS) (Dkt. 673 at 2) (ordering defendant to provide to the Government responses from Rule 17(c) subpoenas "[p]romptly after receipt"); *United States v. Jenkins*, 895 F. Supp. 1389, 1394 (D. Haw. 1995) (finding the magistrate erred in "failing to permit both the Government and the Defendant to examine" the Rule 17(c) materials because "Rule 17(c) makes no provision for allowing only one party access to the documents"); *United States v. Hart*, 826 F. Supp. 380, 381 (D. Colo. 1993) (noting that the plain language of Rule 17(c) "negates any assumption" that materials should be returned *ex parte*).

Moreover, "Rule 17(c) was not intended to provide an additional means of discovery" to the parties in a criminal case. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). Rather, the Rule was "designed as an aid for obtaining relevant evidentiary material that the moving party may use at trial." *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980). Indeed, "courts must be careful that rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in [Rule] 16." *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995) (internal quotation marks omitted)). Accordingly, a Rule 17(c) subpoena must meet the tests of "(1) relevancy; (2) admissibility; [and] (3) specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974). The Second Circuit has made clear that this standard applies to Rule 17(c) subpoenas issued by criminal defendants to third parties. *See United States v. Conway*, 615 F. App'x 46, 48 (2d Cir. 2015). As Judge Seibel has observed, "because Rule 17(c) subpoenas are intended to obtain specific materials that the party expects to offer into evidence, Rule 16 would oblige the party to make the materials available to the other side anyway." *United States v. St. Lawrence*, No. 16 Cr. 259 (CS) (S.D.N.Y. Dec. 22, 2016) (Dkt. 66); *see also United States v. Londonio, et al.*, No. 17 Cr. 89 (CS) (S.D.N.Y.) (Jan. 3,

2019 Tr., at 77-78) ("[I]f either side has used 17(c) and gets materials, they have to be turned over to the other side. . . . [I]f either side has been properly using Rule 17(c) subpoenas, which are intended to obtain specific materials that the party expects to offer at trial, that's Rule 16 material."). In other words, assuming that any Rule 17(c) subpoenas here are properly issued, the responsive materials are necessarily subject to disclosure to the Government under Rule 16.

Here, the Court should order the defendant to promptly produce discovery pursuant to Rule 16. The Court should also order that any documents obtained by the defendant in response to a Rule 17(c) subpoena be promptly produced to the Government. The Court should further order that any materials currently in the possession of the defendant but not so produced should be precluded from trial.

## XI.    The Court Should Preclude the Defendant From Offering His Statements for Their Truth

The defendant should be precluded from offering any of his own statements from any emails, mobile chat threads, text messages, voicemails, public statements (including on the Modest Needs website), or videos, as they are inadmissible hearsay. Although the Government may offer a defendant's statement as a party admission, a defendant does not have a parallel ability to offer his own statements into evidence without subjecting himself to cross-examination. "When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982); *see also United States v. Yousef*, 327 F.3d 56, 153 (2d Cir. 2003) (holding that defendant "could have testified to everything asserted in his statement, [but] he could not offer the document itself for the truth of the matter asserted"); *United States v. Rea*, 958 F.2d 1206, 1225 (2d Cir. 1992) (same); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1987) ("[D]efense counsel wished to place

[the defendant's] statement before the jury without subjecting [the defendant] to cross-examination, precisely what the hearsay rule forbids.").

## CONCLUSION

For the reasons set forth herein, these motions *in limine* should be granted.

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney

By:  s/ Eli J. Mark
    Eli J. Mark
    Rebecca R. Delfiner
    Assistant United States Attorneys
    (212) 637-2431/2447