```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
UNITED STATES OF AMERICA                    :
                                            :
      - v. -                                :
                                            :      S1 24 Cr. 524 (JLR)
  KEITH TAYLOR                              :
                                            :
             Defendant.                     :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

# THE GOVERNMENT'S RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTION IN LIMINE

JAY CLAYTON
United States Attorney
Southern District of New York

Eli J. Mark
Rebecca R. Delfiner
James G. Mandilk
Assistant United States Attorneys
    - Of Counsel -

1

**PRELIMINARY STATEMENT**

The Government writes in response to defendant Keith Taylor's motion in limine (Dkt. 46) (the "Motion" or "Mot."), which asks the Court to exclude "'lavish lifestyle' and spending habits evidence." (Mot. 1.) The defendant's fraudulent expenditures of Modest Needs's funds, lavish and otherwise, are direct evidence of the charged offenses, and that relevance is not substantially outweighed by a risk of unfair prejudice and will not confuse or mislead the jury. Accordingly, the Motion should be denied.

**FACTUAL BACKGROUND**

As described more fully in the Complaint (Dkt. 1) and the Government's motions in limine (Dkt. 34), which the Government incorporates by reference, Taylor was the founder, president, and CEO of Modest Needs, a New York-based non-profit organization formed in Manhattan. From at least in or about 2016 through in or about 2024, Taylor embezzled more than $2.5 million from Modest Needs and defrauded its donors, including by paying for personal expenses from Modest Needs's bank accounts, including his housing, dining at some of New York's most expensive restaurants, and high-end electronics and other luxury goods. He also made false and misleading statements concerning, among other things, his pay, his use of Modest Needs's funds, and the putative existence of a board of directors that, in truth, included acquaintances of the defendant who never attended a Modest Needs board meeting. For at least the calendar years of 2017 through 2022, Taylor did not file personal income tax returns and evaded income taxes on income he received from Modest Needs, including the personal expenses he paid for from Modest Needs's bank accounts.

**APPLICABLE LAW**

Under Federal Rule of Evidence 401, evidence is "relevant" if it "has any tendency to make a fact more or less probable than it would be without the evidence," so long as "the fact is of consequence in determining the action." Fed. R. Evid. 401. "The fact to which the evidence is directed need not be in dispute." *Old Chief v. United States*, 519 U.S. 172, 179 (1997) (quoting Fed. R. Evid. 401 advisory committee's note); *see also* Fed. R. Evid. 401 advisory committee's note ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding. . . . A rule limiting admissibility to evidence directed to a controversial point would invite the exclusion of this helpful evidence, or at least the raising of endless questions over its admission."). To be relevant, evidence need not constitute conclusive proof of a fact in issue, but only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *McKoy v. North Carolina*, 494 U.S. 433, 440 (1990) (internal quotation marks and citation omitted).

Federal Rule of Evidence 402, in turn, provides that "relevant evidence is admissible," unless the Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. This is a very low standard. *See, e.g.*, *United States v. Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006) ("so long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry" (citing *United States v. Ravich*, 421 F.2d 1196, 1204 n.10 (2d Cir. 1970) (Friendly, J.))).

The Court may preclude otherwise admissible evidence under Federal Rule of Evidence 403 only if its probative value is "substantially outweighed" by the danger of, among other things,

unfair prejudice or misleading or confusing the jury. Fed. R. Evid. 403. Evidence is not excludable, however, simply because it is "prejudicial." As the Second Circuit has explained:

> To be sure, all evidence incriminating a defendant is, in one sense of the term, "prejudicial" to him: that is, it does harm to him. In that sense, the more pertinent evidence is, the more prejudicial it is. What "prejudice" as used in Rule 403 means is that the admission is, as the rule itself literally requires, "unfair" rather than "harmful."

*United States v. Jimenez*, 789 F.2d 167, 171 (2d Cir. 1986); *see also, e.g.*, *Oregon v. Kennedy*, 456 U.S. 667, 674 (1982) ("Every act on the part of a rational prosecutor during a trial is designed to 'prejudice' the defendant by placing before the judge or jury evidence leading to a finding of his guilt."); *United States v. Vargas*, 702 F. Supp. 70, 72-73 (S.D.N.Y. 1988) ("[The fact] that evidence may be 'damning' does not render it inadmissible." (citing *United States v. Cirillo*, 468 F.2d 1233, 1240 (2d Cir. 1972))).

In short, "[b]ecause virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be *unfair*." *Costantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) (emphasis in original). To warrant exclusion of evidence on this ground, a defendant must be able to identify "'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)); *United States v. Gilliam*, 994 F.2d 97, 100 (2d Cir. 1993) (same).

## ARGUMENT

The Court should admit evidence of Taylor's personal expenditures because such expenditures are highly probative evidence of the charged offenses that will inform—rather than confuse, mislead, or unfairly prejudice—the jury.

I.       **Taylor's Expenditures Are Highly Probative**

Taylor's personal expenditures are highly relevant as direct evidence of the charged offenses, as evidence of Taylor's motive and intent, and inextricably intertwined with evidence regarding the charged offenses. As alleged, Taylor embezzled funds from Modest Needs in multiple ways, including by paying for personal expenses directly from Modest Needs's bank accounts and by diverting money to Taylor's own financial accounts for his personal benefit. For example, the Government expects that the evidence at trial will show that during the charged period, Taylor used Modest Needs's accounts to directly spend more than a hundred thousand dollars on each of the following categories of personal expenses: (1) Taylor's housing and utility bills; (2) world-class restaurants like Jean Georges, Per Se, and Marea; (3) meal delivery, including MaxDelivery, Seamless, Caviar, and Instacart; (4) personal medical expenses; and (5) luxury goods and electronics. Taylor's personal expenditures thus demonstrate (1) a scheme to defraud; (2) the defendant's fraudulent intent; and (3) the use of interstate wires, all of which are elements of Counts One and Two. Further, when Taylor used Modest Needs's funds to pay for his personal expenses, that constituted income that generated a substantial tax liability that Taylor willfully avoided paying, which are required elements for the tax evasion counts. Taylor's personal expenditures are at the heart of this case and have substantial probative value for every count in the Indictment. *See United States v. Avenatti*, No. 19 Cr. 374 (JMF) (S.D.N.Y. Jan. 13, 2022) (Tr. 33) (granting government motion to admit "evidence regarding the disposition of criminal proceeds subject to specific objections to particular evidence" as "(1) direct evidence of the defendant's scheme to defraud; (2) proof that he controlled the disposition of the fraud proceeds; and (3) evidence of the defendant's motive and intent to commit the charged crimes.").

Apart from evidence of the personal expenses themselves, the Government also expects to present evidence regarding Taylor's interests in high-end restaurants and luxury goods, like caviar,

5

as highly relevant evidence not only to demonstrate that Taylor's use of Modest Needs's funds was personal in nature, and not business-related expenses, but also to demonstrate Taylor's motive to commit the charged offenses. *See, e.g.*, *United States v. Shah*, No. S4 19 Cr. 833 (SHS) (S.D.N.Y. May 25, 2022) (Dkt. 561) (Tr. 43) (granting government's motion to admit evidence of defendant's spending on luxury items and explaining that "[i]f the government has evidence that she is living above her means and therefore there is a motive here to engage in fraud, that's very traditional [under] *United States v. [A]ddario*, 662 F. App'x 61, 63 (2d Cir. 2016) and many other cases"); *Addario*, 662 F. App'x at 63 (summary order) (affirming conviction where district court admitted evidence of defendant's "spending habits," including "information about his substantial gambling activity" and "records of his personal expenditures, such as expensive automobiles, trips, and country club fees," because "the spending and gambling activity could explain [the defendant's] motive for committing the fraud," and declining to address Rule 403 argument on appeal on harmless-error grounds); *United States v. Brennerman*, No. 17 Cr. 337 (RJS) (S.D.N.Y. Nov. 20, 2017) (Tr. 33) (denying defense motion to preclude evidence of defendant's use of wire and bank fraud proceeds because, among other reasons, "it goes to intent . . . , goes to consciousness of guilt, [and] motive"); *United States v. Mahmoud Thiam*, No. 17 Cr. 47 (DLC) (S.D.N.Y. Apr. 27, 2017) (Tr. 392-93) (finding that evidence that defendant used bribe money to buy and renovate a home "in a luxurious manner," was "highly relevant," and would not cause unfair prejudice under Rule 403); *United States v. Levy*, No. 11 Cr. 62 (PAC), 2013 WL 815915, at *2 (S.D.N.Y. Mar. 5, 2013) (finding that evidence of how defendants spent their money was admissible to show, among other things, their motive for engaging in criminal conduct).

Taylor's relevance argument rests on the mistaken premise that Taylor "embezzled money" and only "*then* spent that money on personal expenses." (Mot. 1 (emphasis added).) In truth, and

as alleged in the Complaint and Indictment, the embezzlement and the personal expenditure were often one and the same. That Taylor used Modest Needs's accounts to pay for his personal expenses thus in many instances is direct evidence of the embezzlement, not evidence of how he later spent money that he previously stole. And in other instances, Taylor used Modest Needs's funds to pay for his credit cards for expenses that he claimed were business-related, but in reality were personal. Thus, the nature of the personal expenses is directly relevant to show that the expenses were not business-related. Furthermore, Taylor does not even attempt to argue that Taylor's personal expenditures are irrelevant to the tax evasion charges. When Taylor used Modest Needs's accounts to make personal purchases (regardless of whether he was entitled to have Modest Needs pay for those expenses, as he asserts without any evidentiary support in his Motion), that was income for which he should have paid taxes. Taylor's spending (and his spending habits) during the charged period is probative of whether the defendant "owe[d] a substantial amount of federal income tax" for the years in question—a necessary element to prove the tax evasion counts pursuant to 26 U.S.C. § 7201. *See* Joint Request to Charge Number 15 (Counts Three Through Eight: Tax Evasion, Elements of the Offense) (Dkt. 35, at 27). The nature of Taylor's expenditures (and that they were consistent with his personal interests and desires) is a key fact for the jury to consider in determining whether they are taxable income because it sets Taylor's personal expenses apart from Modest Needs's true business expenses. *See United States v. Simonelli*, 237 F.3d 19, 30 (1st Cir. 2001) (observing, when defendant spent "considerable sums" on "homes, country clubs, cars and other accoutrements of wealth," that the jury "could easily conclude that these were not legitimate business expenses for the company but were really income to" the defendant).

Taylor's personal expenditures, both from Modest Needs's bank accounts and from his own, are also highly probative of the willfulness element for the tax evasion counts. *See* Joint Request to Charge Number 18 (Counts Three Through Eight: Tax Evasion, Third Element – Knowingly and Willfully) (Dkt. 35, at 33) (Government must demonstrate defendant "intentionally failed" to "file a tax return and to report his income for the years 2017 to 2022 by the appropriate deadlines" "with the purpose of evading his duty under the tax laws, and not as a result of accident or negligence"). Taylor's prodigious spending made it more likely that he knew of his legal duty to report income but made a "voluntary, intentional" choice to ignore that duty. *Cheek v. United States*, 498 U.S. 192 (1991) (holding "willfulness" is the "voluntary, intentional violation of a [known legal] duty"). Taylor's active spending of large sums is more probative of his knowledge of his income than his passive receipt of money. See *United States v. Marabelles*, 724 F.2d 1374, 1379 (9th Cir. 1984) ("Although direct proof of a taxpayer's intent to evade taxes is rarely available, willfulness may be inferred by the trier of fact from all the facts and circumstances."). Moreover, when Taylor spent lavishly using Modest Needs's accounts rather than his own, he side-stepped regular reporting channels of income, hid his true income from the IRS, and prevented the IRS from garnishing his income stream. This is further evidence of willfulness. Trial courts in similar tax cases commonly recognize that lavish spending is probative of willfulness. *See United States v. Mendoza*, 382 Fed. App'x 507, 510-11 (7th Cir. 2010) (corporate funds "spent lavishly" on personal items was properly considered as evidence of willfulness of tax evasion); *United States v. Chesson*, 933 F.2d 298, 304-06 (5th Cir. 1991) (similar); *United States v. Olbres*, 61 F.3d 967, 971 (1st Cir. 1995) ("defendants' lavish spending" supported "inference that the defendants must have been aware" their tax return "substantially underreported their income").

Taylor concedes that the jury is entitled to learn that he "charge[d] some personal expenses to the Foundation" but claims that that "is all the jury needs to know about Taylor's spending—'personal expenses.'" (Mot. 4.) Yet Taylor has given no indication that he intends to admit that he "charge[d]" *millions of dollars* in personal expenses "to the Foundation." The Government is entitled to prove as much. *See United States v. Ewings*, 936 F.2d 903, 906 (7th Cir. 1991) ("in crimes where the object is financial enrichment, evidence that one has been enriched is probative of participation in the crime"). Moreover, even if Taylor were to concede the full scope of the personal expenditures he made using Modest Needs's money, the lavish nature of some of his expenses would still have significant probative value because the nature of Taylor's purchases helps establish his specific intent to defraud, the materiality of his statements and omissions, and the willfulness of his tax evasion.

In assessing intent and materiality, for example, jurors will be asked to compare Taylor's words with his actions. *See* Joint Request to Charge Number 6 (Count One: Wire Fraud, Second Element – Participation in the Scheme with Intent to Defraud) (Dkt. 35, at 13) ("The ultimate facts of knowledge and intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, words, conduct, acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn therefrom."); Joint Request to Charge Number 5 (Count One: Wire Fraud, First Element – Existence of a Scheme or Artifice to Defraud) (Dkt. 35, at 10) ("[To establish materiality,] it is sufficient if the representation is one that is capable of influencing the person's decision and is intended by the defendant to do so."). Taylor asserts that "it does not matter if he spent the stolen money on bubble gum (as opposed to caviar) or for meals at McDonald's (as opposed to at a NYC Michelin-starred restaurant)." (Mot. 3.) He is mistaken. Taylor not only drastically

9

underrepresented his compensation on Modest Needs's website and its Form 990s, but also, and more specifically, he failed to report that he was using money donated to the Modest Needs Foundation for decidedly personal expenses. The nature of how and for what he embezzled money demonstrates both his specific intent to defraud and the materiality of his misrepresentations.

The sole case cited by Taylor on this point is readily distinguishable. Here, the defendant's personal expenditures are not merely evidence of motive to commit the crime—they are highly probative evidence of the crime. In *United States v. Hatfield*, the defendant in a securities fraud case did not dispute that he had received a substantial amount of compensation. "[T]he relevant question [wa]s not how he acquired the money he used to fund his extravagant lifestyle," but rather "whether the stock trades and compensation methods he used to acquire this money were legal." *United States v. Hatfield*, 685 F. Supp. 2d 320, 326 (E.D.N.Y. 2010). The trial court excluded evidence of the defendant's spending under Rule 403. *Id.* Here, by contrast, Taylor has not admitted that he received millions of dollars in unreported compensation from Modest Needs, as the Government will prove, and one of the relevant questions *is* "how he acquired the money." *Id.* at 326. As the *Hatfield* court itself observed (when distinguishing other cases), evidence of a defendant's expenditures is admissible to show that "the defendant diverted company or investor funds to his personal expenses." *Id.* That is precisely what Taylor did, and precisely what the Government's evidence will show.

For these reasons, Taylor's personal expenditures and his preferences for certain high-end goods and services are highly probative.

## II.   Evidence Concerning Taylor's Expenditures Will Not Confuse, Mislead, or Unfairly Prejudice the Jury

Under Rule 403, otherwise admissible evidence may only be excluded if its probative value is substantially outweighed by, as relevant here, unfair prejudice and/or a risk of confusing or

misleading the jury. The significant probative value of evidence concerning Taylor's fraudulent expenditures, lavish and otherwise, is not substantially outweighed by any such risk.

First, any prejudice arising from this evidence is not unfair. The defendant chose to divert money he fraudulently raised with the stated intention to provide it to the neediest among us by spending Foundation funds on his lavish lifestyle. Proving that the defendant did so at trial will obviously prejudice the defendant in the sense that it will tend to prove his guilt of the crimes charged, but such prejudice is not in any way unfair because it is attributable entirely to the crime itself, not to some unrelated aspect of the defendant's life. Describing the central acts the defendant took in committing his crimes is not "unfair." *See Vargas*, 702 F. Supp. at 72-73 ("[T]hat evidence may be 'damning' does not render it inadmissible.").

The defendant suggests that this type of evidence risks inflaming the jury's emotions and will "lead them to convict Taylor simply because they dislike what he chose to spend money on, his habits, and how he chose to live his life." (Mot. 4.) But the Government has no intention of arguing that the jury simply should convict because of what he chose to buy. Nor does the Government intend to offer evidence of a taste for more expensive goods devoid of a connection to the very expenditures at issue in this case. Rather, as described above, the Government intends to demonstrate that Taylor's specific personal expenditures in this case were evidence of the charged offenses and that his interest in certain luxury items is proof that the expenditures were personal (not business) and shows Taylor's motive for engaging in the charged offenses. To preclude this evidence would be to preclude a critical part of the story of the charged crimes themselves.

As the Second Circuit explained in *United States v. Garnes*, trial courts should be careful not to "overstate the risk of unfair prejudice" when the Government seeks to offer evidence

describing the defendant's criminal conduct that forms "part of the res gestae, the narrative the government rightly seeks to tell at the guilt phase of a trial." 102 F.4th 628, 641 (2d Cir. 2024). (internal quotation marks and citation omitted). This is especially true where the facts in question "may ultimately be a crucial factor for the jury in considering whether [he] had the requisite mental state." *Id.* at 642; *see id.* at 632 (finding, in threats prosecution, that district court abused its discretion by excluding Government's evidence of threatening statements made by defendant that exaggerated defendant's criminal history).

Applying these principles to similar facts, courts have frequently held that evidence of a defendant's expenditures, including lavish ones, is admissible to prove unreported income and that the probative value of such evidence is not substantially outweighed by a risk of unfair prejudice. *See United States v. Back*, 740 F. App'x 525, 527 (9th Cir. 2018) (purchase of hundreds of thousands of dollars in precious metals was "probative of whether [defendant] had sufficient taxable income to be required to file returns" and of the "willfulness element" and was not "unduly prejudicial"); *United States v. DeMuro*, 677 F.3d 550, 559 (3d Cir. 2012) (affirming trial court's refusal to exclude, on Rule 403 grounds, evidence of defendants' "lavish personal spending," which was offered to prove defendants' tax evasion was "willful").

Taylor claims that evidence concerning the nature of Taylor's expenses will confuse the jury or waste its time, inviting "numerous mini trials concerning whether each expenditure can or should be traced to some misappropriation of the Foundation's funds." (Mot. 4.) This characterization again betrays a misunderstanding of the facts and the issues at trial: many of the expenditures in question were themselves fraudulent misappropriations of the Foundation's funds since the expenditures came directly from Modest Needs's accounts. That will be a critical fact for the jury in determining guilt or innocence.

Finally, to the extent there is any potential concern of unfair prejudice arising from the nature of the defendant's personal expenditures and desires, the Government would consider any limiting instruction proposed by the defendant. *See United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006).

## CONCLUSION

For the reasons set forth herein, the Motion should be denied.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: /s James G. Mandilk
    Eli J. Mark
    Rebecca R. Delfiner
    James G. Mandilk
    Assistant United States Attorneys
    (212) 637-2431/2447/2453