UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————x

UNITED STATES OF AMERICA,

          -v-

KEITH TAYLOR,

        **Defendant.**
———————————————————————x

S2 24 Cr. 524 (JLR)

**MEMORANDUM OF LAW IN SUPPORT OF**

**DEFENDANT KEITH TAYLOR'S MOTION**

**TO WITHDRAW GUILTY PLEA**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
KEITH TAYLOR'S MOTION TO WITHDRAW GUILTY PLEA**

**PRELIMINARY STATEMENT**

Keith Taylor respectfully moves pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B) to withdraw his guilty plea entered on August 18, 2025.

Mr. Taylor is not guilty of the charges in the superseding indictment. He has maintained his legal innocence — to his attorney immediately after the plea, to the Probation Office at his presentence interview, and to the undersigned. He moves to require the government to prove its case at trial.

Mr. Taylor pled guilty because he learned, just before the scheduled trial date, that lead counsel — who had represented him for three years, who understood his defense, and whom he trusted — was gravely ill and had not prepared for trial. Co-counsel, appointed four months earlier,

US v. Taylor, 24 Cr. 524 (JLR)
July 16, 2026
Page 2 of 22

was also unprepared. Mr. Taylor understood the risks and was prepared to proceed. But a trial with

unprepared counsel would have been, a hollow exercise. (Taylor Aff. ¶ 13.)

A fair and just reason exists for withdrawal. Mr. Taylor's plea was not the product of a free

and voluntary choice. It was the product of a structural breakdown in representation — one his

own counsel acknowledged at a pretrial conference two months before the plea — that left him

facing trial with lawyers who had not prepared a defense, who had not accurately informed him of

the true state of that preparation, and who ultimately advised him that pleading guilty was the only

course available.

But for this breakdown in representation, Mr. Taylor would not have pled guilty.

**STATEMENT OF FACTS**

**A. Charges and Prior Proceedings**

On August 18, 2025, Keith Taylor entered a guilty plea before the Honorable Jennifer L.

Rochon to Count One (wire fraud, 18 U.S.C. § 1343) and Counts Three through Ten (tax evasion,

26 U.S.C. § 7201) of Superseding Indictment S2 24 Cr. 524. Count Two (aggravated identity theft,

18 U.S.C. § 1028A, carrying a mandatory consecutive two-year term) was held open and is to be

dismissed at sentencing. Prior to the plea, the case had been scheduled for trial.

Mr. Taylor was represented at the time of the plea by attorney Brian P. Ketcham, as lead

counsel, whom he had retained in 2023 in connection with the IRS investigation that led to the

2024 Indictment. In March 2025, Mr. Taylor's funds were depleted and he qualified for CJA

counsel. The Court appointed Mr. Ketcham in a non-panel CJA capacity and attorney Sabrina

Shroff as co-counsel. Mr. Ketcham has since passed away. Ms. Shroff was subsequently relieved. The undersigned was appointed as successor CJA counsel.

## B. The Representation

In 2023, the Modest Needs Foundation, which Mr. Taylor founded and led, was served with IRS subpoenas for documents. Mr. Taylor retained attorney Ketcham to respond to the subpoenas and handle communications with IRS counsel. Mr. Taylor was deeply involved in responding, working closely with Mr. Ketcham to develop and present his defense. In September 2023, Mr. Ketcham made presentations to IRS counsel on Mr. Taylor's behalf. No response came. (Taylor Aff. ¶¶ 4–5.)

On June 11, 2024, Mr. Taylor was arrested. Mr. Ketcham filed a Notice of Appearance as lead counsel. Mr. Taylor told him he was not guilty. (Taylor Aff. ¶ 5.) On September 2, 2024, he was charged by Indictment and entered a plea of not guilty. Rule 16 productions began on or about September 27, 2024, with additional productions following. Trial was scheduled for May 12, 2025, with pretrial motions due January 6, 2025. Throughout the fall of 2024, Mr. Taylor worked regularly with Mr. Ketcham, flagging documents and identifying potential witnesses. (Taylor Aff. ¶¶ 5–6.)

Just before the January 6 deadline, Mr. Ketcham was hospitalized. The government submitted a letter on his behalf requesting an extension. Through that filing, Mr. Taylor first learned of the hospitalization. He was personally concerned but remained confident in Mr. Ketcham's ability to continue. (Taylor Aff. ¶ 7.)

US v. Taylor, 24 Cr. 524 (JLR)
July 16, 2026
Page 4 of 22

On or about March 6, 2025, Mr. Taylor met with Mr. Ketcham, who presented him with a Pimentel letter from the government estimating the Guidelines he would face if convicted. Mr. Ketcham told Mr. Taylor, for the first time, that he should plead guilty. Mr. Taylor told him that he did not want to plead guilty. At a subsequent meeting, he reiterated that decision. (Taylor Aff. ¶ 8.)

By this time substantially behind on his legal bills, Mr. Taylor was advised by Mr. Ketcham that he could qualify for CJA funding. On March 24, 2025, the Court approved CJA funding for Mr. Ketcham's continued representation and appointed attorney Sabrina Shroff as co-counsel. (Taylor Aff. ¶ 9.) Mr. Taylor understood that Ms. Shroff was a highly experienced trial attorney and that her primary role would be to assist Mr. Ketcham at trial. (Id.)

Ms. Shroff did not develop a close working relationship with Mr. Taylor and appeared unfamiliar with the details of the case, consistent with his understanding that she would assist at trial rather than lead it. (Taylor Aff. ¶ 9.) Mr. Taylor continued to work with Mr. Ketcham to prepare motions in limine, which Mr. Ketcham filed in April 2025. (Id.)

## C. April 2025: Trial Postponed Due to Lead Counsel's Medical Condition

On April 11, 2025, Ms. Shroff wrote to the Court that '[o]ne defense counsel in this matter was hospitalized on an emergent basis with a serious medical condition' which prevented counsel from meeting pretrial deadlines and made it 'unclear whether the trial can proceed on May 12, 2025.' At a conference on April 14, 2025, the Court adjourned the trial to the June 23 through July 9, 2025 window. The Court had now moved the trial twice. (June 10 Tr. at 12.) Following the

adjournment, Mr. Ketcham became less responsive to Mr. Taylor's communications. (Taylor Aff. ¶ 11.)

On June 9, 2025 — the day before the next court conference — Mr. Ketcham sent a letter to the Court representing that he would be in inpatient care for seven days and available to return to work after that. (June 10 Tr. at 3.) Mr. Taylor, aware of this letter, remained hopeful that Mr. Ketcham would recover and return. (Taylor Aff. ¶ 11.)

**D. June 10, 2025: Trial Postponed a Second Time; Co-Counsel Tells the Court Mr. Taylor 'Was Not Properly Represented'; Bail Is Modified**

On June 10, 2025, the Court held a pretrial conference. Ms. Shroff reported that Mr. Ketcham had been largely unavailable to Mr. Taylor "for some time," that she had no contact with him in more than a week, that he held "the entire file" and "carried the laboring oar" on critical trial preparation tasks, and that she had recently learned Mr. Ketcham was unconscious and being taken to the hospital. (June 10 Tr. at 5–6.)

Ms. Shroff stated plainly:

"I do think Mr. Taylor is correct if he were to tell the court that he was not properly represented. I don't know how far back this issue goes, because I wasn't part of that team, so to speak." (June 10 Tr. at 6.)

Ms. Shroff further advised the Court that the case was "precariously close to a 2255, if this trial date were to stick." She explained that if Mr. Ketcham were to drop off the case she would have "some fundamental work[ ]" to do: "he has the discovery files. He has the database." She requested the assistance of additional CJA counsel to try the case. (June 10 Tr. at 6–7.)

US v. Taylor, 24 Cr. 524 (JLR)
July 16, 2026
Page 6 of 22

Ms. Shroff also addressed a pro se motion that Mr. Taylor had filed with the Court on June 4, 2025, telling the Court that "the pro se motion sort of dovetailed with the issues of representation" — specifically, whether the work done by counsel had been done properly given issues with payment. (June 10 Tr. at 6–7.) The Court returned the motion to counsel per local rules without consideration.

The Court adjourned the trial a second time, to September 8, 2025. (June 10 Tr. at 19.) In doing so, the Court noted that it had now moved the trial twice and stated it would not do so again. (June 10 Tr. at 12.) The Court presumed that Mr. Ketcham would not be involved in trial preparation and that Ms. Shroff would take over the case. (June 10 Tr. at 19: 'I am going to presume that Mr. Ketcham is not going to be involved in this trial and the trial preparation, for my purposes. That is why I am moving the trial to September 8.') Ms. Shroff agreed that September 8 gave her enough time. (Id.)

At the June 10 conference, Mr. Taylor learned for the first time that his attorneys were not preparing for trial together. (Taylor Aff. ¶ 10.)

By the time of the June 10 conference, Mr. Taylor's relationship with Ms. Shroff had become strained and contentious. She was visibly upset about the pro se motion he had filed raising concerns about his representation. She yelled at him on more than one occasion, and at Mr. Ketcham as well during their joint interactions. When Mr. Ketcham was present, Mr. Taylor felt some measure of stability; Mr. Ketcham's long history with the case and knowledge of the defense gave him a degree of confidence the representation otherwise lacked. The prospect of proceeding to trial with Ms. Shroff as sole lead counsel — without Mr. Ketcham — frightened Mr. Taylor. He

found her manner intimidating. This fear contributed to his belief that trial under those circumstances would not constitute a genuine defense. (Taylor Aff. ¶ 12.)

Ms. Shroff's representation that September 8 would give her enough time was made before the full consequences of what followed became clear. The bail conditions imposed that same day — the internet blackout, electronic monitoring, and prohibition on Modest Needs advances — left Mr. Taylor unable to work, communicate with counsel by email, access records, or fund any aspect of his defense preparation. (PSR ¶ 55; Taylor Aff. ¶ 10.) Mr. Ketcham never returned. Rather than an opportunity for Shroff to prepare with Taylor's active assistance, the period between June 10 and the plea became one of isolation, inactivity, and increasing pressure to resolve the case.

Also at the June 10 conference, the government moved to revoke bond, resting on a mischaracterization of Modest Needs' operations. (Taylor Aff. ¶ 10.) Ms. Shroff successfully opposed remand, but the Court substantially modified bail — prohibiting internet access, electronic monitoring, and advances from Modest Needs — eliminating Mr. Taylor's ability to communicate with counsel, access records, or contribute to his defense. (Id.)

**E. August 2025: Plea Agreement**

Plea discussions were first raised in July 2025. Mr. Taylor agreed to allow counsel to contact the government to assess any offer, but told Mr. Ketcham he wished to proceed to trial. (Taylor Aff. ¶ 13.) On August 14, Mr. Ketcham called Mr. Taylor, told him a plea had been scheduled, and asked him to come to the office to review the agreement. When Mr. Taylor reviewed it, he told Mr. Ketcham he would not sign — he was not guilty. Mr. Ketcham told him the agreement expired that day and it was his last chance. (Id.)

US v. Taylor, 24 Cr. 524 (JLR)
July 16, 2026
Page 8 of 22

Mr. Taylor signed the agreement. He did so because he did not believe that Mr. Ketcham — gravely ill, in possession of a file Ms. Shroff had said she lacked — was prepared to defend him at trial. Nor did he believe that Ms. Shroff could fill that gap. By the time of the plea, their relationship had become contentious and he found her manner intimidating; the prospect of proceeding to trial under her sole lead — without Mr. Ketcham — was frightening. (Taylor Aff. ¶¶ 11–12.) He understood the risks of trial and was willing to accept them. But a trial with unprepared counsel, under those circumstances, would have been a hollow exercise. (Taylor Aff. ¶ 13.)

**F. August 18, 2025: Plea Allocution**

At the August 18, 2025 plea proceeding, Mr. Taylor read a prepared statement. (Plea Tr. at 25.) Ms. Shroff did not appear. The Court noted at the outset that co-counsel 'has another proceeding she is at,' and that Mr. Taylor would be proceeding without her. (Plea Tr. at 2.) Mr. Taylor entered his guilty plea accompanied only by Mr. Ketcham — the same counsel Ms. Shroff had told the Court was unprepared and whose file she could not access.

The Court asked Mr. Taylor at the outset whether he takes any medications. He disclosed that he takes eleven different medications daily, including Wellbutrin, Cymbalta, and Trazodone, and that he sees a psychiatrist weekly. (Plea Tr. at 4–6.) He told the Court that the medications were not affecting his ability to understand the proceedings. (Id.) By this point, however, his psychiatric treatment had been disrupted for months due to his inability to pay; he had been living on food banks and selling personal items since the June 10 bail modification stripped him of the ability to work or receive income. (PSR ¶ 55.)

US v. Taylor, 24 Cr. 524 (JLR)
July 16, 2026
Page 9 of 22

The Court asked whether Mr. Taylor was satisfied with his attorneys' representation. He answered yes. (Plea Tr. at 8.) At that point in the proceeding, Mr. Taylor had not yet been asked about his defenses, his intent, or whether he agreed with the factual basis for the plea. That answer is consistent with what followed: Mr. Taylor answered the Court's questions as Mr. Ketcham directed him to, including, as discussed below, the specific intent question where he expressly told Mr. Ketcham he disagreed before being instructed to answer yes. (Taylor Aff. ¶ 14.)

On the wire fraud count, Mr. Taylor's statement admitted that he had used foundation funds 'for some of my personal expenses by intentionally transferring funds electronically' and had made statements on the foundation's website and IRS forms that were 'misleading and not entirely truthful.' (Plea Tr. at 25.) He stated that he 'knew what [he] did was wrong.' (Id.)

Before the plea hearing, Mr. Taylor met with Mr. Ketcham to review the written allocution. He told Mr. Ketcham that he would not say he had defrauded anyone because it was not true, and those words were not included in his statement. (Taylor Aff. ¶ 14.)

When the Court asked whether Mr. Taylor had participated in the fraud "knowingly and willfully," he answered yes. (Plea Tr. at 25–26.) When the Court then asked whether he had "the specific intent to engage in that fraud," Mr. Taylor did not answer. He conferred with counsel. He told Mr. Ketcham that he had not defrauded anyone. Mr. Ketcham told him he had to answer yes. (Taylor Aff. ¶ 14.) Mr. Taylor answered yes. (Plea Tr. at 26.)

When asked whether his prepared statement was truthful and accurate, Mr. Taylor responded: "To the best of my knowledge, your Honor, yes." (Plea Tr. at 27.)

US v. Taylor, 24 Cr. 524 (JLR)
July 16, 2026
Page 10 of 22

On the tax evasion counts, Mr. Taylor admitted that he had not filed federal income tax returns for 2017 through 2024 and had not reported or paid taxes on income from the foundation. He admitted that he "willfully failed" to file. (Plea Tr. at 26.) He did not admit any affirmative act of concealment or evasion beyond the failure to file itself.

## G. Post-Plea Events

Shortly after the plea, Mr. Taylor told Mr. Ketcham he wanted to withdraw it. Mr. Ketcham told him to proceed with the presentence process first and that he would research the withdrawal motion. (Taylor Aff. ¶ 15.)

On November 12, 2025, Mr. Taylor attended his presentence interview at the SDNY courthouse with Ms. Shroff. He brought a written statement to the Probation Officer explaining why he believed he was wrongly charged and the circumstances that led him to plead guilty anyway. Ms. Shroff reviewed the statement, crossed out certain sections, and gave the remainder to the officer. (Taylor Aff. ¶ 16.)

The Probation Officer confirmed this was a written statement Ms. Shroff reviewed before submission. Prepared three months after the plea, before any withdrawal motion was contemplated, the statement described his decision as follows:

"In August 2025, after meetings between my lawyers and the prosecution, I received a plea offer...With trial preparation not feasible under my constraints and counsel advising the risks of trial were severe, I accepted the agreement and pled guilty in late August 2025. My purpose was not to avoid responsibility...but to resolve the case in the only way that seemed realistically available." (PSR ¶ 55.)

US v. Taylor, 24 Cr. 524 (JLR)
July 16, 2026
Page 11 of 22

He further stated that his conduct was "the product of exhaustion, inexperience, and fear — not concealment or intent to deceive." (PSR ¶ 55.) He described the transfers at issue as amounts owed to him, documented as a personal debt on the organization's Form 990. (Id.) With respect to the timing, he stated: "In March 2025, as funds dwindled, my counsel urged me to plead guilty; I initially declined." (PSR ¶ 55.)

Mr. Taylor learned that Mr. Ketcham passed away in January 2026. (Taylor Aff. ¶ 17.)

Sentencing was scheduled and adjourned on multiple occasions. Mr. Taylor asked Ms. Shroff whether she was working to prepare a sentencing submission. When she produced nothing, he sought new counsel. (Taylor Aff. ¶ 18.)

The undersigned was appointed as successor CJA counsel on [DATE]. Following review of the discovery record and consultation with Mr. Taylor, the undersigned determined that grounds existed to withdraw the plea.

**ARGUMENT**

Federal Rule of Criminal Procedure 11(d)(2)(B) permits withdrawal of a guilty plea before sentencing where the defendant can show a "fair and just reason for requesting the withdrawal." A defendant who seeks to withdraw a plea bears the burden of showing valid grounds for withdrawal, but that burden is applied liberally. United States v. Doe, 537 F.3d 204, 210 (2d Cir. 2008); United States v. Couto, 311 F.3d 179, 185 (2d Cir. 2002).

Among the factors a court considers in evaluating such a motion are: (1) whether the defendant has asserted legal innocence; (2) the amount of time elapsed between the plea and the

US v. Taylor, 24 Cr. 524 (JLR)
July 16, 2026
Page 12 of 22

motion; and (3) whether the government would be prejudiced by withdrawal. United States v. Schmidt, 373 F.3d 100, 102–03 (2d Cir. 2004); Couto, 311 F.3d at 185. Courts may also look to whether the defendant has raised a significant question about the voluntariness of the original plea. United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997).

**POINT ONE**

**MR. TAYLOR ASSERTS LEGAL INNOCENCE**

Mr. Taylor is not guilty of the charges in the superseding indictment. He seeks to plead not guilty and put the government to its proof at trial.

His assertion of innocence is not new. He told Mr. Ketcham immediately after the plea that he wanted to withdraw it. (Taylor Aff. ¶ 15.) When he appeared at his presentence interview, he provided a written statement leaving no room for doubt that he disavowed his plea. He told the Probation Officer that he was innocent of the charges and had pled only because "trial preparation was not feasible." (PSR ¶ 55.) Ms. Shroff was present at that interview and reviewed his statement before it was provided to the officer. (Taylor Aff. ¶ 16.) She knew he asserted innocence.

Throughout his tenure as founder and president of Modest Needs Foundation, he received funds from the organization as compensation for his services. He believed he was authorized to receive this compensation. He did not take funds he believed he was unauthorized to take and did not intend to deceive anyone. To the extent the amounts he received exceeded what was formally documented as his salary, he understood the excess as additional compensation owed to him and treated those amounts as a personal debt to the organization, which he was in the process of repaying. (Taylor Aff. ¶ 3.)

This account is consistent with what Mr. Taylor told the Probation Office three months after the plea: that his conduct was "the product of exhaustion, inexperience, and fear — not concealment or intent to deceive," and that the transfers were amounts owed to him and documented as a personal debt on the organization's Form 990. (PSR ¶ 55.)

**The Plea Allocution Corroborates Mr. Taylor's Account**

Four features of the plea allocution are consistent with a defendant who did not genuinely accept his guilt but proceeded under the circumstances described above. Before addressing those features, two threshold colloquy answers warrant attention.

At the outset of the hearing, the Court asked Mr. Taylor whether he was satisfied with his attorneys' representation. He answered yes. (Plea Tr. at 8.) This answer carries less weight than it might, for a straightforward reason: Mr. Taylor answered this question, as he answered the others that preceded the allocution itself, affirmatively and without resistance, because he was following Mr. Ketcham's lead throughout the proceeding. His conferral with counsel on the specific intent question — discussed below — is direct evidence that Mr. Taylor was answering questions as directed rather than making independent judgments. He conferred with counsel and told Mr. Ketcham he had not defrauded anyone; Mr. Ketcham told him he had to answer yes. (Taylor Aff. ¶ 14.) His earlier answer that he was satisfied with his representation was made in the same proceeding, under the same dynamic.

The Court also asked Mr. Ketcham whether he knew of 'any valid defense that would prevail at trial or any reason why your client should not be permitted to plead guilty.' Mr. Ketcham answered: 'I do not, your Honor.' (Plea Tr. at 27.) That answer conflates two distinct questions.

US v. Taylor, 24 Cr. 524 (JLR)
July 16, 2026
Page 14 of 22

Whether a defense will prevail at trial is counsel's professional assessment. Whether a defendant has the right to assert that defense at trial is not counsel's decision to make.

The accused has the ultimate authority to make certain fundamental decisions regarding his case — including the decision whether to plead guilty. Jones v. Barnes, 463 U.S. 745, 751 (1983). Autonomy over the objective of the defense belongs to the defendant, not counsel. 'It is the defendant's prerogative, not counsel's, to decide on the objective of his defense.' McCoy v. Louisiana, 584 U.S. 414, 138 S.Ct. 1507 (2018). Although McCoy arose in a capital case, its principle is not capital-specific: the Court's own reasoning drew directly on the non-capital right to refuse a guilty plea — 'a defendant may steadfastly refuse to plead guilty in the face of overwhelming evidence against her' — and the McCoy majority itself cited Jones v. Barnes at 751 for the list of decisions reserved to the defendant that includes the plea decision. Id. at 138 S.Ct. 1508.

Mr. Taylor understood the risks of proceeding to trial. He was prepared to accept them. (Taylor Aff. ¶ 13.) Counsel's assessment that the defense was unlikely to succeed did not extinguish his right to present it.

First, the prepared statement for Count One is facially ambiguous on the essential element of unauthorized taking. Mr. Taylor said: "I used funds donated to the foundation for some of my personal expenses by intentionally transferring funds electronically from the foundation's accounts to my personal accounts." (Plea Tr. at 25.) This describes the act of transfer — but says nothing about whether he believed he was authorized to make those transfers. A founder and sole executive officer who draws funds he believes he is owed as compensation also "uses funds for personal

expenses by intentionally transferring funds." The statement does not say the transfers were unauthorized. The word "unauthorized" appears nowhere in Mr. Taylor's prepared statement.

His assertion that he "knew what he did was wrong" is similarly ambiguous. "Wrong" is a lay term that does not map to any element of wire fraud. A person who believes he overstated his compensation entitlement, or failed to observe proper formalities, may consider his conduct "wrong" in the ordinary sense without conceding he acted with specific intent to defraud. The prepared statement, on its face, is consistent with the authorization defense Mr. Taylor now asserts.

Indeed, when Mr. Taylor met with Mr. Ketcham to prepare the allocution, he told Mr. Ketcham that he would not say he had defrauded anyone because it was not true. Those words were not part of his statement. (Taylor Aff. ¶ 14.)

Second, when the Court asked whether Mr. Taylor had participated in the fraud "knowingly and willfully," he answered yes. (Plea Tr. at 25–26.) But this answer referred to "the behavior you described" — and the behavior Taylor had just described was ambiguous as to authorization. The "knowingly and willfully" answer is only as strong as the factual predicate to which it was attached.

When the Court then asked whether he had the specific intent to engage in that fraud, Mr. Taylor did not answer. He conferred with counsel. He told Mr. Ketcham again that he had not defrauded anyone. Mr. Ketcham told him he had to answer yes. (Taylor Aff. ¶ 14.) He answered yes. (Plea Tr. at 26.)

A defendant who had genuinely formed the specific intent to defraud would not need to consult counsel before acknowledging it. This moment is the clearest evidence in the transcript

US v. Taylor, 24 Cr. 524 (JLR)
July 16, 2026
Page 16 of 22

that the allocution was something Mr. Taylor was guided through rather than a spontaneous and informed admission of guilt.

Third, the Court's final cleanup question — asked after the government's extensive proffer — was: "She talked about misrepresentations regarding salary, oversight by director, transfer of charity funds, et cetera. Did you engage in that behavior?" Mr. Taylor answered yes. (Plea Tr. at 32–33.) The question's use of "et cetera" invited an omnibus "yes" to a broad summary of contested conduct without requiring Mr. Taylor to admit each element specifically. His "yes" to that question is not the same as a specific, element-by-element admission of guilt. It is consistent with a defendant confirming that he made transfers and certain statements — not that he did so without authorization or with specific intent to defraud.

Fourth, when asked whether his prepared statement was truthful and accurate, Mr. Taylor responded: "To the best of my knowledge, your Honor, yes." (Plea Tr. at 27.) This qualified response — hedged, not unequivocal — is consistent with a defendant reading language he did not draft and did not fully embrace as his own.

Fifth, on the tax evasion counts, Mr. Taylor admitted willful failure to file returns but did not admit any affirmative act of evasion of tax assessment. Tax evasion under 26 U.S.C. § 7201 requires an affirmative act of evasion beyond mere failure to file. Spies v. United States, 317 U.S. 492, 499 (1943) (distinguishing § 7201 from the lesser offense of willful failure to file under § 7203). Willful but passive neglect of the statutory duty may constitute the lesser offense; only an additional affirmative act of evasion lifts the offense to the degree of felony. Spies, 317 U.S. at 499. The government's proffer at the allocution supplied additional conduct that Mr. Taylor did

not himself admit. The adequacy of the factual predicate on the § 7201 counts is therefore arguable.

See United States v. Maher, 108 F.3d 1513, 1529 (2d Cir. 1997).

## POINT TWO

## THE PLEA WAS THE PRODUCT OF CONSTITUTIONALLY DEFICIENT REPRESENTATION

A guilty plea must be knowing and voluntary. Brady v. United States, 397 U.S. 742, 748 (1970). Where counsel's deficient performance undermines the voluntary and intelligent nature of a defendant's decision to plead guilty, the plea may not stand. United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005). The decision to plead guilty belongs to the defendant. Jones v. Barnes, 463 U.S. 745, 751 (1983). For that decision to be knowing and voluntary, the defendant must be accurately informed of the true state of his case. Brady, 397 U.S. at 748.

That standard was not met here. Mr. Taylor believed that Mr. Ketcham and Ms. Shroff were preparing for trial together. The June 10, 2025 conference revealed that this was not the case. Ms. Shroff told the Court that Mr. Ketcham had been largely unavailable 'for some time,' that he held 'the entire file' and 'carried the laboring oar' on critical trial preparation tasks, and that she was 'precariously close to a 2255, if this trial date were to stick.' (June 10 Tr. at 5–7.) She had no file, no exhibits, and no trial director. (Id.) She told the Court plainly: Mr. Taylor 'was not properly represented.' (June 10 Tr. at 6.)

Two months before the plea, co-counsel was telling the Court that lead counsel had not properly represented Mr. Taylor and that she could not try the case without additional help. At the plea hearing itself, Ms. Shroff was absent entirely. (Plea Tr. at 2.) Mr. Taylor entered his guilty

plea with only a gravely ill lead counsel present — the same attorney whose representation Ms. Shroff had characterized as deficient on the record.

The bail conditions imposed at the June 10 conference compounded the problem. The internet blackout, electronic monitoring, and prohibition on Modest Needs advances left Mr. Taylor, as he described to the Probation Office, 'unable to work, pay most bills, or continue meaningful preparation.' (PSR ¶ 55.) He was 'reli[ant] on food banks, Medicaid, small family gifts, and selling personal items.' (Id.) He could not communicate by email, access records, or fund any aspect of his defense in the months before trial.

Under these circumstances, Mr. Taylor pled guilty. He told the Probation Office three months after the plea — before any motion to withdraw was contemplated, with prior counsel present — that the plea was 'the only way that seemed realistically available.' (PSR ¶ 55.) Those are the words of a defendant who believed he had no genuine alternative, not one who made a free and voluntary choice.

The standard voluntariness questions at the plea proceeding did not reach this. Those questions asked whether anyone had threatened or made promises to Mr. Taylor — not whether the structural circumstances of his representation had left him with a genuine choice. Mr. Taylor's claim is not a bare contradiction of his allocution; it is corroborated by the on-the-record admissions of his own counsel, made two months before the plea, and by his own pre-motion account to the Probation Office. See United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997) (court may consider whether defendant has raised a significant question about the voluntariness of the original plea).

The government may argue that, as of June 10, the Court gave Ms. Shroff nearly three months to prepare for the September 8 trial date, that she agreed that was enough time, and that the lack of defense preparation prior to June 10 reflected choices by the defense rather than a breakdown in representation. Neither point withstands scrutiny. Ms. Shroff's agreement on June 10 that September 8 gave her enough time was made before the bail conditions imposed that same day stripped Mr. Taylor of any ability to contribute to his own defense. Those conditions — the internet blackout, the prohibition on Modest Needs advances, the elimination of any income — left Taylor without the ability to work, communicate with counsel, access records, or fund any aspect of trial preparation. (PSR ¶ 55.) And Mr. Ketcham never returned. The September 8 date was never tested because, under those conditions, the plea was the only course that appeared realistically available.

Counsel also failed to investigate the defense Mr. Taylor wished to assert. Counsel has a duty to conduct a reasonable investigation before advising a client to plead guilty. Strickland v. Washington, 466 U.S. 668, 690–91 (1984). Mr. Taylor told counsel that he was authorized to receive the funds at issue — that they represented compensation owed to him as founder and sole operational officer of Modest Needs. (Taylor Aff. ¶ [___].) Counsel neither investigated that defense nor advised Mr. Taylor of its potential viability before advising him to plead. (Taylor Aff. ¶¶ [___]–[___].) Advice to plead guilty premised on an attorney's inability to prepare a defense — rather than on a competent professional assessment of the defense's merits after reasonable investigation — is not constitutionally adequate counsel. Arteca, 411 F.3d at 320.

The Second Circuit has recognized that defense counsel's honest but negative assessment of trial prospects, combined with advice to plead, does not constitute coercion sufficient to

invalidate a plea. United States v. Juncal, 245 F.3d 166, 172 (2d Cir. 2001). But the operative word in Juncal is 'honest.' An assessment is honest in the professional sense only when it proceeds from competent preparation. An attorney who lacks the file, has not investigated the defense, and cannot try the case without additional counsel is not in a position to render an honest professional assessment of trial risk. The advice that flowed from that position is not the kind of candid professional judgment that Juncal recognizes as legitimate.

Mr. Taylor states that he would not have pled guilty had counsel prepared a defense, investigated the authorization theory, and presented him with a genuine choice. (Taylor Aff. ¶ [__].) His consistent insistence that he did not freely choose to plead — evident from his initial declination in March 2025, his PSR statement, and his representations to the undersigned — is probative of prejudice. Hill v. Lockhart, 474 U.S. 52, 59 (1985). The allocution itself further corroborates this, as set forth in Point One above.

## POINT THREE

### THIS MOTION WAS MADE WITHIN A REASONABLE TIME

Under the second Schmidt factor, the delay is fully explained by the circumstances of Mr. Taylor's representation.

Mr. Taylor told Mr. Ketcham immediately after the plea that he wanted to withdraw it. Mr. Ketcham advised him to proceed with the presentence process first while he researched the withdrawal motion. (Taylor Aff. ¶ 15.) In October 2025, Mr. Ketcham informed Mr. Taylor that the presentence interview had been postponed due to a government shutdown. That was their last

US v. Taylor, 24 Cr. 524 (JLR)
July 16, 2026
Page 21 of 22

conversation. Mr. Ketcham passed away in January 2026. (Taylor Aff. ¶¶ 15–17.) No counsel was pursuing the withdrawal motion, and there was no path to filing one.

Sentencing was scheduled and adjourned. Mr. Taylor sought new counsel when Ms. Shroff produced no sentencing submission. (Taylor Aff. ¶ 18.) The undersigned was appointed on [DATE], reviewed fifteen productions of discovery material, and consulted with Mr. Taylor before determining that grounds existed to withdraw the plea. The delay is accounted for by the death of lead counsel, co-counsel's failure to pursue the withdrawal motion Mr. Taylor requested, the transition in representation, and the time required for new counsel to review the record. None of the delay is tactical.

## POINT FOUR

### THE GOVERNMENT WILL NOT BE PREJUDICED BY WITHDRAWAL

The third Schmidt factor — government prejudice — favors withdrawal. United States v. Schmidt, 373 F.3d 100, 102–03 (2d Cir. 2004). This case is document-driven. The government's evidence consists primarily of financial records, IRS filings, and bank statements. No witness has died or become unavailable during the period since the plea. The one witness identified at the plea hearing as the subject of a pending deposition had not yet been deposed when the plea intervened, and remains available. (Plea Tr. at 33.) The government will suffer no material prejudice from withdrawal.

US v. Taylor, 24 Cr. 524 (JLR)
July 16, 2026
Page 22 of 22

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and permit Mr. Taylor to withdraw his guilty plea. To the extent the Court requires further development of the factual record, Mr. Taylor respectfully requests an evidentiary hearing. United States v. Gonzalez, 970 F.2d 1095, 1100–01 (2d Cir. 1992). Upon withdrawal of the plea, Mr. Taylor respectfully requests that the Court schedule this matter for trial.


Respectfully submitted,


Evan Lipton
Attorney for Keith Taylor
S2 24 Cr. 524 (JLR)

Dated: New York, New York

July 16, 2026