**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x

**UNITED STATES OF AMERICA,**

**-v-**

**KEITH TAYLOR,**

**Defendant.**

---------------------------------------------------------------- x

**S2 24 Cr. 524 (JLR)**

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KEITH TAYLOR'S MOTION TO WITHDRAW GUILTY PLEA**

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KEITH TAYLOR'S MOTION TO WITHDRAW GUILTY PLEA

## PRELIMINARY STATEMENT

The Government's opposition rests on a single premise: Taylor's sworn statements at the plea proceeding carry a strong presumption of accuracy, and his current assertions are nothing more than self-serving recantation. If that were the full picture, the Government would be right.

It is not. Taylor's account is corroborated by three sources that predate this motion, none of which are his own: (1) Shroff's on-the-record admissions at the June 10, 2025 conference that Taylor was not properly represented and that the case was precariously close to a 2255; (2) Taylor's own statement to the Probation Office three months after the plea, given with prior counsel present and before any motion was contemplated, in which he described the plea as 'the only way that seemed realistically available'; and (3) the plea transcript itself, in which Taylor was unable to answer the specific intent question until he conferred with counsel and was directed to do so.

The Government also misreads its own Exhibit B. The document it presents as proof that the authorization defense is 'farcical' actually shows that Taylor disclosed the board situation to the IRS during civil proceedings, that the IRS knew of that situation when it reached a civil settlement with him, and that the board's departure was attributed by Taylor to IRS conduct. None of this is consistent with the Government's portrait of a defendant who knew he was committing a fraud.

Finally, the Government does not address Taylor's constitutional right to assert his defense at trial regardless of its prospects. That omission is telling. The decision to plead guilty belonged to Taylor, not to counsel. When counsel's own inadequacies — including a specific failure at the June 10 bail hearing that directly caused the conditions that made trial impossible — removed that choice from Taylor's hands, the result was not a voluntary plea. It was its absence.

## ARGUMENT

### POINT ONE

### TAYLOR IS NOT JUST CONTRADICTING HIS ALLOCUTION — THREE PRE-MOTION SOURCES INDEPENDENTLY CORROBORATE HIM

The Government leads with the rule from Torres: 'A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.' *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997). That rule is correct. But it does not describe this case.

Taylor is not simply recanting. He is corroborated — by his own counsel, by the Government's own records, and by the plea transcript itself.

### A. Counsel Told the Court Taylor Was Not Properly Represented — Before the Plea

Two months before the plea, Taylor's own co-counsel told this Court that Taylor 'was not properly represented,' that she lacked 'the entire file,' that the case was 'precariously close to a 2255,' and that she needed additional counsel to try the case. (June 10 Tr. at 5-7.) These are not Taylor's words. They are counsel's, made on the record, before the plea — before any withdrawal motion was conceived. The Government does not dispute them. It cannot.

The *Torres* 'bald statements' rule was designed to prevent defendants from simply walking back solemn admissions with nothing more than 'I changed my mind.' It was not designed to bar a motion supported by counsel's own pre-plea, on-the-record concessions about the adequacy of the representation.

### B. The PSR Statement Is Objective Pre-Motion Evidence

The Government relies on *United States v. Gordon,* 156 F.3d 376, 380-81 (2d Cir. 1998), for the proposition that proof a defendant would not have pled guilty must include 'further objective evidence' beyond self-serving testimony. The Government then uses the PSR statement to argue that Taylor made a rational, informed decision to plead.

The Government cannot have it both ways. The PSR statement is the objective evidence Gordon requires. It was made three months after the plea, with prior counsel present, before any motion was filed. Taylor told the Probation Officer that his conduct was 'not concealment or intent to deceive,' that the plea was 'the only way that seemed realistically available,' and that his counsel 'urged' him to plead in March 2025 while he 'initially declined.' (PSR ¶ 55.) Those statements are not the product of this litigation. They are contemporaneous, third-party documented, counsel-reviewed assertions of everything Taylor now claims.

The Government reads the PSR statement selectively — extracting language about the plea's benefits while ignoring the language about its involuntariness. The Court should read it whole.

### C. The Specific Intent Episode Is Evidence of Directed Testimony, Not Routine Consultation

The Government argues that defendants routinely confer with counsel during plea proceedings and that Taylor's conference before answering the specific intent question was unremarkable. (Gov. Opp. at 18, n. 5.)

But a defendant who genuinely possessed specific intent to defraud does not need to consult counsel before acknowledging it. The pause, and the conference that preceded Taylor's answer, are evidence that the admission did not reflect Taylor's understanding of his own mental state. See Taylor Aff. ¶ 14 (Taylor told counsel during that conference that he 'would not say I had defrauded anyone or stolen money'). Combine that with his statement to Probation three months later that his conduct was 'not concealment or intent to deceive,' (PSR ¶ 55), and the inference is plain.

### D. The *Blackledge* Presumption the Government Relies Upon Also Requires a Hearing

The Government's principal authority, *Blackledge v. Allison*, 431 U.S. 63 (1977), cuts in two directions. The Court did hold that plea allocution statements carry a 'strong presumption of verity.' Id. at 74. But the same case held that courts cannot 'adopt a per se rule excluding all possibility' that a defendant's representations at the time of the plea were 'the product of misunderstanding, duress, or misrepresentation by others.' Id. at 75. *Blackledge* itself resulted in a remand for an evidentiary hearing. When a defendant raises genuine factual questions about what counsel told him — and that counsel is not available to testify — the presumption does not resolve those questions. A hearing does.

## POINT TWO

## COUNSEL'S FAILURE AT THE JUNE 10 BAIL HEARING WAS INEFFECTIVE ASSISTANCE WITH A DIRECT AND TRACEABLE CONSEQUENCE

The Government's opposition addresses the June 10 conference in one paragraph and treats it as background context. It is more than that. Shroff's failure to contest the Government's factual premise at the bail hearing was a specific, identifiable instance of deficient performance that produced direct and traceable harm.

### A. The Government Moved to Revoke Bail on Facts It Already Possessed

At the June 10 conference, the Government moved to revoke Taylor's bail based on allegations that he had continued to use Modest Needs funds for personal expenses — including his rent — while on pretrial release. Taylor's position is that these payments were authorized by him as the organization's founder and sole remaining officer, that they were made openly, and that the Government had possessed the relevant bank statements for many months before making its *ex parte* motion to revoke Taylor's bail. The Government's motion was not premised on new information — it was premised on documents it already held.

Counsel was unable to contest this. She did not have the file. She did not know the underlying facts. She argued a technicality about the bond conditions rather than the factual substance of the Government's allegations. Had she known the relevant facts she would have been able to refute the Government's allegations that (1) the payment of expenses was authorized and ongoing; (2) Taylor had been removed as signatory to the Modest Needs account months earlier; and (3) donations were no longer being accepted, and any indication otherwise was due to website automations that did not correspond to actual financial transactions. (Taylor Aff. ¶ 9.) The factual premise went effectively uncontested.

### B. The Bail Conditions That Followed Made Trial Preparation Impossible

The Court denied remand but imposed substantial restrictions: no internet access, electronic monitoring, and a prohibition on further advances from Modest Needs. (June 10 Tr. at 57.) Those conditions, imposed because the Government's factual account went unanswered, eliminated Taylor's ability to work, communicate with counsel by email, access records, or contribute to his own defense. (PSR ¶ 55; Taylor Aff. ¶ 9.) He was reduced to food banks and selling personal items while the September 8 trial date approached.

The Government argues that the bail conditions were less restrictive than those experienced by detained defendants and that Taylor could still meet with counsel. (Gov. Opp. at 20.) That argument proves too much. The question is not whether Taylor was technically able to place a phone call. It is whether the conditions created by inadequate advocacy at the June 10 hearing contributed to the circumstances that made the plea feel unavoidable — and they did.

The consequence — bail conditions that isolated Taylor from meaningful participation in his own defense — was the direct and traceable product of Shroff's acknowledged lack of preparation and her inability to access the file Ketcham held. It was not a tactical choice.

## POINT THREE

## THE GOVERNMENT MISREADS ITS OWN EXHIBIT B — THE AUTHORIZATION DEFENSE IS NOT FARCICAL

The Government argues that Taylor's authorization defense is 'farcical' and cites Exhibit B as proof. The document does not support that characterization. It actually contains material that the Government omitted and that corroborates Taylor's good-faith belief defense.

### A. The Government Omitted the Most Important Sentence in Exhibit B

The Government quoted two sentences from Exhibit B. It did not quote this one: 'Again I reiterate, the IRS was aware of the situation as concerns our BOD at the time it settled with us in 2018, and we were in the process of conducting what looked like it would've been a successful board search until the IRS stopped that search by opening a criminal investigation into MNF and myself.' (Exhibit B, USAO_00018944.)

This sentence is significant for three reasons. First, Taylor disclosed the board situation to the IRS during civil proceedings years before his arrest and indictment — the opposite of concealment. Second, the IRS settled with Taylor in 2018 with knowledge of the governance gap — which corroborates Taylor's claim that he did not believe he was engaged in criminal conduct. Third, Taylor attributes the failure to reconstitute the board to the IRS investigation itself, not to his own indifference or intent to mislead or defraud the organization.

The Government presents Exhibit B as a confession that the authorization defense is groundless. It is not. It is a civil administrative response in which Taylor disclosed the board situation and attributed the governance gap to external pressure. A defendant who discloses facts to the agency investigating him and obtains a civil settlement with that agency's knowledge does not thereby confess that his conduct was criminal.

### B. Taylor's Defense Is That He Was Authorized as Founder and Sole Remaining Officer — Not That a Board Approved His Compensation

The Government attacks the authorization defense as if it requires proof that a functioning multi-member board approved Taylor's compensation. That is not the defense. Taylor's position is that he reasonably believed he was authorized to receive compensation in his role as the organization's founder and sole operational officer — particularly after the governance structure was disrupted by circumstances he attributes to government action. (Taylor Aff. ¶ 3.)

Whether that belief was legally correct is a question for trial. Whether he held it in good faith goes to the essential element of specific intent to defraud. A defendant who believed he was entitled to receive compensation he took did not act with the specific intent to defraud anyone of anything — regardless of whether a board approved it. This is the defense Taylor wishes to assert, and Exhibit B does not defeat it.

## POINT FOUR

## THE GOVERNMENT DOES NOT DISPUTE THAT THE DECISION TO GO TO TRIAL BELONGED TO TAYLOR — NOT TO COUNSEL

The Government's opposition does not address Taylor's argument that the decision to plead guilty belonged to him, not to counsel. *Jones v. Barnes*, 463 U.S. 745, 751 (1983); *McCoy v. Louisiana*, 584 U.S. 414, 138 S. Ct. 1507-08 (2018). That silence is telling.

The Government's best response to the Juncal argument — that counsel's honest assessment of trial risk does not constitute coercion — is that Ketcham rendered an honest professional judgment and Taylor simply disagreed with it. But the risk Taylor faced was not simply conviction — it was conviction without any meaningful opportunity to assert his defense. Taylor understood that risk. He was prepared to accept it. (Taylor Aff. ¶ 13.) He did not plead guilty because counsel told him the defense was weak. He pled because counsel's own failures had made it impossible to present the defense at all. That is a different claim — and Juncal does not reach it.

The Government asks the Court to conclude that Taylor's plea was a calculated decision to avoid the mandatory consecutive sentence for aggravated identity theft. That framing ignores what Taylor has said consistently since the day after the plea. He has asserted innocence at every opportunity — at the PSR interview, to Ketcham, and to the undersigned. A defendant who strategically pleads to avoid a mandatory minimum does not immediately seek to withdraw the plea.

## POINT FIVE

## THE ELEVEN-MONTH DELAY IS EXPLAINED BY THE DEATH OF LEAD COUNSEL, THE TRANSITION IN REPRESENTATION, AND THE COMPLEXITY OF THE RECORD

The Government characterizes the eleven-month gap between the plea and this motion as evidence of a strategic, calculated decision by a defendant who is simply trying to undo a bad bargain. (Gov. Opp. at 22-24.) The record does not support that characterization.

Taylor raised his desire to withdraw the plea immediately after entering it. He told Ketcham the same day or shortly thereafter. (Taylor Aff. ¶ 15.) Ketcham advised him to proceed with the presentence process while he researched the motion. That was their last substantive conversation. Ketcham passed away in January 2026. (Taylor Aff. ¶ 17.) At that point there was no counsel actively pursuing the withdrawal motion and no path to filing one.

The undersigned was appointed on February 10, 2026. Before filing this motion, counsel was required to review fifteen productions of discovery material from multiple sources, visit Taylor at the Essex County Jail to understand his account and how the evidence related to his theory of defense, and advise him fully on all aspects of his legal situation. That process was not brief. It was necessary.

The motion was filed only after that process was complete and after Taylor had been comprehensively advised and had unequivocally directed that it be brought. The delay reflects the time required to ensure that the decision to bring this motion was fully informed and considered.

## POINT SIX

## DENYING THE MOTION DOES NOT AVOID LITIGATION —

**IT MOVES DISPUTED FACTS TO A FATICO HEARING WITH A LOWER STANDARD OF PROOF**

The Government argues that granting the motion would prejudice it and waste resources. What the Government does not acknowledge is that denial does not resolve the disputed facts about Taylor's offense conduct, loss amount, and relevant conduct — it simply relocates the litigation to a sentencing hearing governed by the preponderance standard, at which the Government would seek to prove those facts through hearsay from a summary agent.

Taylor disputes material facts that will be litigated at sentencing regardless of the outcome of this motion — including the scope of the loss amount, the characterization of specific transactions, and whether particular conduct was authorized. If the motion is denied, those disputes will be resolved at a Fatico hearing with reduced procedural protections and without the safeguard of reasonable doubt. If the motion is granted, they will be resolved at trial. The Government's argument that granting the motion is costly ignores that denying it does not avoid cost — it shifts it to a different forum under less favorable conditions for Taylor and, ultimately, less reliable fact-finding.

**POINT SEVEN**

**THE GOVERNMENT'S PREJUDICE CLAIM IS SPECULATIVE AND OVERSTATED**

The Government argues prejudice from faded witness memories and the need to re-assemble its case. (Gov. Opp. at 24-26.) Those assertions are not supported by specifics.

The Government's primary evidence consists of financial records, bank statements, IRS filings, and Taylor's own communications — none of which fade with time. The Government identifies no witness who has died or become unavailable. The purported board members — a bartender, a former girlfriend, and a house cleaner — were interviewed by the Government before the plea and their interview memoranda were produced to defense counsel. They remain available.

The auditor who confronted Taylor in 2009 and 2010 was identified in the PSR. The California deponent whose deposition was pending when the plea intervened is not mentioned in the opposition at all — suggesting no unavailability the Government is willing to put on the record.

The Government also argues prejudice to the 'thousands of donor victims' who have submitted impact statements. (Gov. Opp. at 26.) That is a sentencing consideration, not a legal ground for denying a plea withdrawal motion. Victim impact statements are prepared for sentencing proceedings — which will occur if and when there is a finding of guilt. The inconvenience of notifying victims of a trial is real but does not constitute the kind of prejudice that forecloses a defendant's right to seek withdrawal of an involuntary plea.

## POINT EIGHT

## THE COURT SHOULD HOLD AN EVIDENTIARY HEARING — DISPUTED FACTS ABOUT WHAT COUNSEL TOLD TAYLOR CANNOT BE RESOLVED ON PAPER

The Government asks the Court to deny this motion without a hearing. That request should be denied.

The central factual dispute in this case — what Ketcham told Taylor about the plea, the authorization defense, and the specific intent question — cannot be resolved on the current record without credibility determinations. Ketcham's absence from the record does not resolve the dispute in the Government's favor; it is precisely the reason a hearing is necessary. A paper denial based on the presumption of verity from the allocution would substitute that presumption for the factual inquiry that counsel's death has made impossible to conduct in the ordinary way.

The Government's own primary authority requires more. *Blackledge v. Allison*, 431 U.S. 63 (1977), held that courts cannot 'adopt a per se rule excluding all possibility' that representations at a plea proceeding were the product of misrepresentation. Id. at 75. *Blackledge* itself resulted in

a remand for an evidentiary hearing on a defendant's claims about undisclosed counsel representations. The same result is warranted here. When a defendant raises genuine factual questions about counsel's conduct, those questions cannot be resolved by relying on sworn statements made under the influence of the very conduct being challenged. At minimum, the corroborated claims Taylor presents raise a 'significant question about the voluntariness of the original plea' that warrants a hearing. *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997).

**CONCLUSION**

For the foregoing reasons, and for the reasons set forth in the motion and the accompanying Affirmation of Keith Taylor, the motion should be granted. To the extent the Court has questions about the factual record underlying the motion, Taylor respectfully requests an evidentiary hearing.

Respectfully submitted,

Evan Lipton
*Attorney for Keith Taylor*
S2 24 Cr. 524 (JLR)

Dated: New York, New York

August 19, 2026